IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01595-CMA-MJW

PINON SUN CONDOMINIUM ASSOCIATION, INC., a Colorado non-profit corporation,

Plaintiff,

v.

ATAIN SPECIALTY INSURANCE COMPANY, a foreign corporation,
INDIAN HARBOR INSURANCE COMPANY, a foreign corporation, and
GREAT LAKES INSURANCE, SE f/k/a GREAT LAKES REINSURANCE (UK) Plc, a foreign corporation,

Defendants.

---

GREAT LAKES INSURANCE, SE f/k/a GREAT LAKES REINSURANCE (UK) Plc, a foreign corporation,

Defendant and Third-Party Plaintiff,

v.

CLAIM SOLUTIONS LLC, a Colorado limited liability company,
SCOTT BENGLEN, individually,
SHALZ CONSTRUCTION LLC, a Colorado limited liability company; and
BRADLEY SHALZ, individually,

Third Party Defendants.

---

**REPORT AND RECOMMENDATION ON
PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTIONS TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
(DOCKET NOS. 52 & 64)**

---

**Michael J. Watanabe
United States Magistrate Judge**

This matter is before the Court on Plaintiff Pinon Sun Condominium Association, Inc. ("Pinion Sun") and Third-Party Defendants Claim Solutions, LLC, Scott Benglen, Shalz Construction, LLC, and Bradley Shalz's (collectively "Movants") Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Nos. 52 & 64). In the subject

motions, Movants seek to dismiss Defendants and Third-Party Plaintiffs Great Lakes Insurance, SE f/k/a Great Lakes Reinsurance (UK) Plc's ("Great Lakes"), Atain Specialty Insurance Case Company ("Atain") and Indian Harbor Insurance Company's ("Indian Harbor") (collectively "Defendants") Counterclaims and Third-Party Complaints for Damages and Declaratory Judgment (Docket Nos. 12 & 51.). Judge Christine M. Arguello referred the subject motions to the undersigned Magistrate Judge. (Docket No. 82) The Court has reviewed the subject motions (Docket Nos. 52 & 64), Defendants' Responses (Docket Nos. 80 & 84), and Movants' Replies. (Docket Nos. 91 & 92.) The Court has taken judicial notice of the Court's file, and considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## I. PROCEDURAL AND FACTUAL HISTORY

### a. Procedural History

Pinon Sun initiated this action on June 30, 2017 by filing a Complaint and Jury Demand against Great Lakes for its unreasonable failure to pay on an insurance policy in the aftermath of a 2016 hail and windstorm. (Docket No. 1.) In response, Great Lakes filed a Counterclaim and Third Party Complaint for Damages and Declaratory Judgment against Pinon Sun; Claim Solutions, LLC and its managing partner, Scott Benglen (collectively "Solutions"); and Shalz Construction LLC and its manager, Bradley Shalz (collectively "Shalz"). (Docket No. 12.) As discussed below, Great Lakes alleges that Pinon Sun and these Third-Party Defendants conspired with each other to commit insurance fraud. Pinon Sun, Solutions, and Shalz filed Answers denying the various

claims for relief. (Docket Nos. 19, 32 & 33.) Then, on September 22, 2017, Pinon Sun filed an Amended Complaint (Docket No. 37) which added Atain and Indian Harbor, the excess carriers under the insurance policy, as defendants. Great Lakes and Atain and Indian Harbor subsequently filed fundamentally identical Third-Party Complaints against Pinon Sun and the Third Party Defendants. (Docket Nos. 49 & 51.) Movants now request that all but the breach of contract counterclaims be dismissed for failing to state plausible claims for relief. (Docket Nos. 52 & 64.)

### b. Factual Background

The following allegations are taken from Defendants' Counterclaims and Third-Party Complaints for Damages and Declaratory Judgment. (Docket Nos. 49 & 51.)

Defendants issued an All Risk Property Damage Coverage Form, Policy Number AIN11039 (the "Policy"), through the Commercial Industrial Building Owners Alliance, Inc. ("CIBA") insurance program, to Pinon Sun for a condominium complex it owned in Colorado Springs, Colorado. (Docket Nos. 49 ¶¶ 12-14 & 51 ¶¶ 201-03.)

On July 28, 2016, Pinon Sun, through Solutions, filed a claim under the Policy for hail loss. (Docket Nos. 49 ¶ 18 & 51 ¶ 207.) Defendants allege that Solutions then entered into a conspiracy with Shalz to commit insurance fraud by claiming an amount for roofing repairs in excess of the actual damage, and then dividing the excess proceeds between themselves. (Docket Nos. 49 ¶ 20 & 51 ¶ 209.) They did this by (1) failing to obtain open competitive bidding for the replacement of the roof; (2) failing to enter into a written contract setting forth the scope of the work and the cost of the services, as required by Colorado law; (3) creating and submitted a false invoice for repairs; (4) making various false claims concerning the siding repairs; and (5) submitting

multiple Sworn Statements in Proof of Loss far in excess of the reasonable cost of repair or replacement. (Docket Nos. 49 ¶¶ 21-29 & 51 ¶¶ 210-218.) Defendants allege that Solutions was the agent of Pinon Sun, and therefore Pinon Sun is legally liable for the fraud and misrepresentations of Solutions.(Docket Nos. 49 ¶ 30 & 51 ¶ 219.)

Defendants assert eight claims for relief: (1) breach of contract against Pinon Sun; (2) fraud and misrepresentation against Pinon Sun, Solutions, and Shalz; (3) insurance fraud against Pinon Sun, Solutions, and Shalz; (4) civil conspiracy against Pinon Sun, Solutions, and Shalz; (5) civil theft against Pinon Sun, Solutions, and Shalz; (6) violation of the Colorado Organized Crime Act, C.R.S. § 18-17-104 ("COCCA"), against Pinon Sun, Solutions, and Shalz; (7) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), against Pinon Sun, Solutions, and Shalz; and (8) for declaratory judgment. (Docket Nos. 49 ¶¶ 34-88 & 51 ¶¶ 223-76.)

Movants now seek to dismiss all of Defendants' claims for relief, except the breach of contract claim. Movants argue that Defendants' merely cite the elements of each claim without providing a factual basis to support each element.

## II. LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc*., 757 F.3d 1125, 1135–36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). Conclusory allegations are insufficient. *Cory v. Allstate Ins*., 583 F.3d 1240, 1244 (10th Cir. 2009). Instead, in

the complaint, the plaintiff must allege a "plausible" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007). A complaint warrants dismissal if it fails "*in toto* to render plaintiffs' entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14 (italics in original). "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard does not require a plaintiff to set forth a prima facie case for each element." *Safe Street Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citation, internal quotation marks, and alteration omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"). The "'burden[, however,] is on the moving party to prove that no legally cognizable claim for relief exists.'" *Hall v. Oliver*, Civil Action No. 15-cv-01949-RBJ-MJW, 2017 WL 1437290, at *4 n.1 (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.)).

## III. ANALYSIS

### a. Fraud/Misrepresentation Claims

Defendants' Second Claims for Relief allege that Pinon Sun, Solutions, and Shalz made false representations of material fact regarding the actual cost and scope of repairs; that Defendants relied on those misrepresentations; and that, as a result, they were damaged in the amount that they paid out under the policy. (Docket Nos. 49 ¶¶44-

5

53 & 51 ¶¶ 233-41.) In their Third Claims for Relief, they allege that Pinon Sun "and its agents, Solutions[,] and Shalz," conspired to commit insurance fraud by providing "statements in support of a claim for payment of a benefit under the insurance policy in excess of the actual loss." (Docket Nos. 49 ¶¶ 54-57 & 51 ¶¶ 242-45.)

Movants argue that Defendants' misrepresentation and insurance fraud claims fail for several reasons. First, they contend that Defendants failed to plead these claims with particularity. Second, they claim that Defendants failed to allege that Shalz is an agent acting on Pinon Sun's behalf, or that Pinon Sun consented to any alleged fraudulent actions by Shalz or Solutions. Finally, Movants state that insurance fraud and claims for misrepresentation are only coverage defenses. Defendants maintain that they sufficiently alleged both claims.

### i. Pleading Standards

Judge Arguello recently set forth the relevant pleading standards for fraud claims:

> Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.
>
> However, a heightened pleading standard applies where a party alleges fraud or mistake. Rule 9(b) demands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." (Emphasis added.) In the "paradigmatic" case of *Trussell v. United Underwriters, Limited*, the Court explained that Rule 9(b) "requires identification of the circumstances constituting fraud or mistake." 228 F. Supp. 767, 774–75 (D. Colo. 1964); *see Noland v. Gurley*, 566 F. Supp. 210, 215–16 (D. Colo. 1983). "More specifically," the Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch*

*Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity connection with an averment of intent, knowledge, or condition of mind." *Trussell*, 228 F. Supp. at 774.

The Tenth Circuit fleshed out the allegations necessary for a sufficient pleading under Rule 9(b) in *Sheldon v. Vermonty*, 246 F.3d 682, 2000 WL 1774038, *4 (10th Cir. 2000) (unpublished table decision). The Tenth Circuit held that the plaintiff had alleged with specific particularity a securities violation, explaining that the complaint

> adequately met Rule 9(b) requirements. First, ... the Complaint alleged misrepresentations with background information as to date, speaker, and the medium of communication. Second, certain of the alleged misrepresentations involved profitable expectations arising from an unowned and inoperable meat-packing plant, a nonexistent lumber company, and fabricated contracts. Accepting [the plaintiff]'s allegations as true, these are patently false statements of present fact. The district court erred in determining they were "mere conclusory allegations of falsity" and in characterizing them as "fraud by hindsight." Third, the allegations of scienter were sufficient.

*Id.* at *5 (emphases added) (citations omitted). At the "procedural juncture" of a motion to dismiss, the Tenth Circuit concluded that "the allegations of fraud need no further explanation." *Id. See S2 Automation LLC v. Micron Tech., Inc.*, 281 F.R.D. 487, 494 (D.N.M. 2012).

Any claim—including claims for breach of contract and negligent misrepresentation—may be subject to Rule 9(b)'s heightened pleading standard if the claim is "grounded in fraud." *City of Raton v. Arkansas River Power Auth.*, 600 F. Supp. 2d 1130, 1141 (D.N.M. 2008) (citing 2 James Wm. Moor, et al., Moore's Federal Practice § 9.03(1)(d), at 9–21 (3d ed. 2008)); *see Denver Health and Hosp. Auth. v.*

> *Beverage Distrib. Co., LLC*, 842 F. Supp. 2d 1171, 1177–78 (holding that Rule 9(b) did not apply to a negligent misrepresentation claim where the "crux of the claim...rings not of fraud but negligence"). For example, the Court concluded "that the particularity requirement is applicable to the negligent misrepresentation claim" where the "plaintiff allege[d] that the defendants concealed and failed to disclose certain facts relevant to the plaintiff's claims for loss of rental income and loss of property." *Gunningham v. Standard Fire Ins. Co.*, No. 07–cv–02538, 2008 WL 4377451, *2 (D. Colo. Sept. 19, 2008).
>
> Why Rule 9(b) is limited in reach to claims grounded in fraud is illuminated by the primary motives that animate the rule. *S2 Automation LLC*, 281 F.R.D. at 494. "First, the requirement of pleading with particularity protects defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct." *Id.* (citing *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003)). Second, it "puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense." *Id.* Third, the rule "prevent[s] plaintiffs from tagging on specious fraud claims to their pleadings in an attempt 'to induce advantageous settlements or for other ulterior purposes.'" *Id.* (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

*Hardy v. Flood*, No. 17-CV-00677-CMA-MJW, 2018 WL 1035085, at *2–3 (D. Colo. Feb. 23, 2018).

**ii. Discussion**

The parties agree that there are five elements of a fraud claim: "(1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 26, 312 P.3d 1155, 1160. Movants argue

8

that Defendants did not plead the first and fifth element with particularity.

As to the first element, Defendants contend that they sufficiently alleged the following specific fraudulent statements:

- Solutions was the agent of Pinion Sun. (Docket Nos. 49 ¶ 30; 51 ¶ 219.)
- Pinon Sun, through its agent, Solutions, submitted multiple Sworn Statements in Proof of Loss far in excess of the reasonable cost of repair or replacement. (Docket Nos. 49 ¶ 27; 51 ¶ 216.)
- Shalz created a false invoice for the repairs which was submitted by Solutions. (Docket Nos. 49 ¶ 23; 51 ¶ 212.)
- "Shalz and Solutions fraudulently claimed work on the Shalz billing that Shalz did not perform and in fact had been performed by others." (Docket Nos. 49 ¶ 24; 51 ¶ 213.)
- Pinion Sun and Solutions knowingly conspired together to make claims in excess of the actual cost of repairs or damages in order to recoup sufficient funds to pay the 10% Public Adjuster Fees for which there is no coverage under the policy. (Docket Nos. 49 ¶ 26; 51 ¶ 215.)

The Court finds that these allegations, and the reasonable inferences that can be drawn therefrom, meet Rule 9(b)'s heightened pleadings standards. They identify who made the false statements: Shalz and Solutions by submitting a fake invoice, and Pinon Sun, through Solutions, making claims far in excess of the actual cost of repairs. Regarding the contents of the misrepresentations, Defendants allege that the contents of the Shalz invoice was false because (1) it was "not based on its contract, not based on the actual cost of the repairs but instead an amount invented solely by Solutions

9

without regard or reference to the actual cost of the repair"; and (2) it claimed that Shalz did work that was actually done by others. While the latter allegation is not specific as to what work was actually performed or who performed the work that Shalz was taking credit for, the act of conspiring to submit a fake invoice with wholly made up figures sufficiently states a claim for fraud. Defendants also adequately allege the consequences of the misrepresentations, contending that they relied on false statements and disbursed funds under the Policy that Movants were not entitled to.

Admittedly, Defendants do not identify the time and place the false invoice and proof of loss statements were submitted. Nor do they allege how much the proofs of loss submitted by Pinon Sun and Solutions exceeded the actual cost of repair. However, Movants are presumably aware of when they submitted their estimates and invoices. They are also aware that the parties' valuations of the claim diverged significantly. *See, e.g.,* Amended Complaint (Docket No. 37 ¶ 110) (alleging that Great Lakes' delay on paying the claim was based on an unreasonable investigation because "the work . . . based on Shalz Construction's invoice is almost twice Defendant Great Lakes' first estimate"). Under these circumstances, Defendants failure to allege these matters does not deprive Movants of meaningful notice of the grounds upon which the Defendants' claims are made.

Next, the Court rejects Movants' argument that Defendants failed to sufficiently allege that Solutions was Pinon Sun's agent such that it can held liable for Solutions' misrepresentations. Defendants allege that an agency relationship existed between the two, and that Pinon Sun consented to Solutions' fraudulent acts. (Docket Nos. 12 ¶¶ 26-27, 29-30; 51 ¶¶ 215-16, 219.) Movants may challenge whether such a relationship

actually existed in a motion for summary judgment, but at this stage, Defendants' allegations, taken as true, are sufficient.

Finally, Movants argue that fraud and misrepresentation by a public adjuster can only be alleged as a coverage defense. In support, they cite *Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7, 12 (Ind. Ct. App. 2010), a case based on Indiana law which has no precedential value. Movants cite no binding Colorado law or statute that permits reducing claims of insurance fraud to an affirmative defense and limiting the recovery of damages. The Court will not adopt such a rule here.

Accordingly, the Court finds that Defendants' Second and Third Claims for Relief satisfy Rule 9(b)'s particularity requirement.

### b. Civil Conspiracy Claims

To establish a claim for civil conspiracy in Colorado, a plaintiff must show that there were: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages which are the proximate result thereof. *Judson v. Black*, No. 10-CV-00504-CMA-KMT, 2015 WL 134172, at *4 (D. Colo. Jan. 9, 2015) (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)). The court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff. *Id.* (citing *Nelson v. Elway*, 908 P.2d 102, 106 (Colo.1995)).

Defendants allege that Movants "conspired by agreeing to fraudulently assert an insurance claim for an amount in excess of the actual hail loss," and effectuated this conspiracy by submitting claims and proofs of loss in excess of the actual costs of

repairs. (Docket No. 49 ¶¶ 58-62 & 51 ¶¶ 246-50.) Because the object of this conspiracy was to commit fraud by making false and material representations, this claim is "grounded in fraud" and subject to the heightened pleading standards of Rule 9(b). For the reasons stated above, Defendants' fraud claims–the unlawful overt acts that furthered the conspiracy–are sufficiently alleged. Movants' argument as to what the Policy does and does not require for sworn proof of loss is irrelevant; Movants' submitted an allegedly fraudulent sworn proof of loss, and Defendants relied on it in adjusting the claim. Therefore, Defendants' Fourth Claim for Relief should not be dismissed.

### c. Civil Theft Claims

A person commits theft under section Colo. Rev. Stat. § 18–4–401(1) when he or she "knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception," and acts intentionally or knowingly in ways that deprive the other person of the property permanently. *See* §§ 18–4–401(1)(a)-(d). The statute requires "the specific intent to permanently deprive the owner of the benefit of property." *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 21, 373 P.3d 603, 608.

Movants claim that Defendants failed to allege facts showing that they did not authorize the insurance proceed payments, or that the payments were made a result of a threat or by deception. As to the former argument, Defendant may have authorized payment on the claim, but it did not authorize a payment in excess of the amount of loss. As to the latter, Defendants did allege that Movants knowingly obtained or exercised

control over insurance payments in excess of the amount of the loss by deception, namely, through the sham invoice and falsified claims. Accepting these allegations as true, as the Court must at this stage, Defendants have stated a claim for civil theft.

### d. COCCA Claims

The parties stipulate that the elements of a COCCA claim are: (1) that defendant knowingly; (2) received proceeds; (3) from a pattern of racketeering activity; (4) as part of an enterprise. C.R.S. § 18-17-104(1)(a). Demonstrating such a pattern can be accomplished "simply by proving at least two acts of racketeering activity, as defined in section 18–17–103(5), that are related to the conduct of the enterprise." *People v. Chaussee*, 880 P .2d 749, 758 (Colo.1994) (emphasis deleted). If the "predicate acts" underlying a plaintiff's COCCA claim are fraudulent acts, the circumstances must be pleaded with the particularity required by Rule 9(b). *See New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1371 (Colo. App. 1993).

Defendants allege that "Solutions and Shalz willingly made exaggerated claims of damage from a hail loss for the purpose of obtaining insurance proceeds to which they were not entitled," and that "[o]n information and belief, [they] have an ongoing business relationship to attempt to obtain insurance proceeds in excess of the actual loss and share the benefits of the fraud and attempt to obtain Public Adjusting fees out of the insurance proceeds." (Docket Nos. 12 ¶¶ 71-72; 51 ¶¶ 257-58.) They allege that the these activities constitute a pattern of racketeering activities, the predicate act being theft. *See id; see also* Colo. Rev. Stat. § 18–17–103(5)(b)(II) .

The Court finds that Defendants allegation that Shalz and Solutions have been

13

engaged in an ongoing scheme to attempt to obtain excessive insurance proceeds is speculative and does not meet Rule 9(b)'s pleading standards. Defendants offer no explanation or evidence as to why they believe this ongoing relationship exists. The Third-Party Complaints describe Movants' conduct only relating to this single claim process. While the Court acknowledges that allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge, see Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992), in Scheidt, the Tenth Circuit made it clear that this is only proper when the complaint sets forth the factual basis for the plaintiff's belief. Id. Here, Defendants offer no such factual basis, only speculation and conclusory allegations.[1] Indeed, they admit in their Responses that "[t]he claim underlying this action has been [Defendants'] only interaction with the Third-Party Defendants." Without more, Defendants cannot maintain their COCCA claims.

**e. RICO**

The COCCA and RICO statutes are similar and are generally construed according to similar principles. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012). A claim for liability under § 1962(c) requires that

---

[1] Defendants reference in their Responses an email between Shalz and individual named Rudy Thompson that they contend demonstrate "Third-Party Defendants' intent to defraud and split the income and intimating this act is of a regular occurrence." (Docket Nos. 80 at 10 & 84 at 11.) A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Third-Party Complaint alone. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (explaining that the Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). The Court will not consider matters outside the pleadings, and therefore excludes Docket No. 80-1.

the plaintiff allege and prove four elements: (i) conduct by a person, (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *See U.S. v. Turkette*, 452 U.S. 576, 580 (1981). RICO defines "racketeering activity" as any act in violation of specified state and federal crimes, including wire fraud, bank fraud, and fraud in the sale of securities. 18 U.S.C. § 1961(1). To claim of a pattern of racketeering activity, a plaintiff must allege the existence of two or more racketeering predicates and that the predicate acts are (1) related and (2) amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Tele.*, 492 U.S. 229, 239 (1989). Under Rule 9(b), each element of a RICO violation and its predicate acts of racketeering must be alleged with particularity. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992).

Defendants fail to allege with any particularity what offenses served as the predicate acts of their RICO claims. Such offenses are set forth in 18 U.S.C. § 1961(1). The theft predicate referred to in their COCCA claim is a state law claim that is not embraced in RICO's definition of predicate offenses. *See Internet Archive v. Shell*, 505 F. Supp. 2d 755, 768 (D. Colo. 2007) (finding that state law claims of theft and computer crime are not RICO predicate offenses). Defendants do not allege any use of the mail or wires, and do not point to any other criteria contained in § 1961(1). Instead, they merely state, "Solutions and Shalz have had an ongoing relationship and have engaged in similar racketeering activities against other persons or organizations. These actions constitute a pattern of racketeering activities as that term is defined by 18 U.S.C. § 1961(4)." This utterly fails to identify a RICO predicate, as is required by Rule 9(b). The allegation is also is deficient for the reasons identified in the Court's discussion of Defendants' COCCA claims. Since Defendants do not sufficiently allege that Movants

committed racketeering offenses, it follows that they cannot show a pattern of racketeering activity. Accordingly, Defendants' RICO claim fails.

### g. Declaratory Judgment

Defendants' Eighth Claim for Relief requests a determination by the Court that Movants' actions constitute fraud, misrepresentation, and concealment during the claim process and requests the Court to declare a forfeiture by Pinon Sun of any benefits under the subject policy, and that the Court order disgorgement and the return of any benefits previously paid by Defendants. (Docket Nos. 49 ¶¶ 86-88 & 51 ¶¶ 272-76.) Movants contend that this request should be dismissed because it is duplicative of its affirmative defenses.

Rule 37 provides that"[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Rule 8 states every claim fo relief must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Movants cite no authority for the proposition that a claim should be dismissed merely because it mirrors an affirmative defense. Thus, they have not met their burden in demonstrating that this claim should be dismissed.

## IV. RECOMMENDATION

It is hereby **RECOMMENDED** that Plaintiff Pinon Sun Condominium Association, Inc. and Third-Party Defendants Claim Solutions, LLC, Scott Benglen, Shalz Construction, LLC, and Bradley Shalz's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Nos. 52 & 64) be **GRANTED** in part and **DENIED** part as follows:

- **DENIED** as to Defendants' Second, Third, Fourth, Fifth, and Eighth Claims

16

for Relief; and

- **GRANTED** as to Defendants' Sixth and Seventh Claims for Relief, and that these claims be **DISMISSED WITHOUT PREJUDICE**.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated: June 29, 2018  　　　　　　　　　　*/s/ Michael J. Watanabe*
　　　　Denver, Colorado　　　　　　　　　Michael J. Watanabe
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge