IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  17-cv-01595-CMA-MJW

PINON SUN CONDOMINIUM ASSOCIATION, INC., a Colorado non-profit corporation,

Plaintiff,

v.

ATAIN SPECIALTY INSURANCE COMPANY, a foreign corporation,
INDIAN HARBOR INSURANCE COMPANY, a foreign corporation, and
GREAT LAKES INSURANCE, SE f/k/a GREAT LAKES REINSURANCE (UK) Plc, a
foreign corporation,

Defendants.

---

GREAT LAKES INSURANCE, SE f/k/a GREAT LAKES REINSURANCE (UK) Plc, a
foreign corporation,

Defendant and Third-Party Plaintiff,

v.

CLAIM SOLUTIONS LLC, a Colorado limited liability company,
SCOTT BENGLEN, individually,
SHALZ CONSTRUCTION LLC, a Colorado limited liability company; and
BRADLEY SHALZ, individually,

Third Party Defendants.

---

**REPORT AND RECOMMENDATION ON
JOINT MOTION TO AMEND ANSWER TO COUNTERCLAIMS AND THIRD PARTY
CLAIMS TO ADD COUNTERCLAIMS AGAINST DEFENDANTS (DKT. #190)**

---

**N. Reid Neureiter
United States Magistrate Judge**

        This matter comes before the Court on Plaintiff Pinon Sun Condominium

Association Inc.'s ("Pinion Sun") and Third Party Defendants Claim Solutions LLC

("Claim Solutions") and Scott Benglen's ("Benglen") (collectively "Movants") Joint Motion

to Amend Their Answer to Defendants' Counterclaims and Third-Party Claims to Add Counterclaims Against Defendants (Dkt. #190). For the reasons stated below, I recommend that the Motion to Amend be **DENIED**.

## 1. BACKGROUND

This is a bad faith insurance lawsuit, originally brought by Pinion Sun against three insurers, including Great Lakes Insurance, SE's ("Great Lakes"), for breach of insurance contract, statutory unreasonable delay, breach of the covenant of good faith and fair dealing, and violation of the Colorado Consumer Protection Act. (Dkt. #1). Great Lakes responded to the complaint with counterclaims against Pinion Sun, as well as third-party claims against Claim Solutions, Benglen, Shalz Construction and Bradley Shalz. Great Lakes' counterclaims and third party claims were for fraud, civil theft, civil conspiracy, and both state and federal racketeering, specifically alleging violations of the Colorado Organized Crimes Act (COCCA) and the federal Racketeer Influenced and Corrupt Organizations Act (RICO). (Dkt. #49.) Great Lakes' counterclaims were based generally on allegations that Pinion Sun and the Third Party Defendants had conspired to commit insurance fraud by claiming an amount for roofing repairs in excess of the actual damage. The targets of Great Lakes' counterclaims allegedly did this by (1) failing to obtain open competitive bidding for the replacement of the allegedly damaged roof, (2) failing to enter into a written contract setting forth the scope of work and the cost of the services, as required by Colorado law; (3) creating and submitting a false invoice for repairs; (4) making various false claims concerning the siding repairs; and (5) submitting multiple Sworn Statements of proof of loss far in excess of the reasonable cost of repair or replacement. (Dkt. #49 ¶¶ 21-29 & #51 ¶¶ 210-18.)

On June 29, 2018, Judge Watanabe recommended that Great Lakes' COCCA and RICO counterclaims be dismissed without prejudice for failure to allege with sufficient particularity facts that would support the necessary predicate acts of racketeering. (Dkt. #167 at 13-17.) However, Judge Watanabe declined to recommend dismissal of Great Lakes' non-racketeering claims for fraud, civil conspiracy, civil theft, and declaratory judgment. (*Id.* at 16-17.) On July 18, 2018, Judge Arguello issued an order affirming and adopting Judge Watanabe's recommendation. (Dkt. #174.)

In light of the dismissal of Great Lakes' COCCA and RICO claims, and also because of the alleged lack of evidence produced to date in discovery to support Great Lakes' remaining counterclaims, Movants Pinon Sun, Claim Solutions, and Benglen, seek to amend their pleadings to add two counterclaims of their own against Great Lakes for (1) abuse of process and (2) malicious prosecution. Movants' primary basis for these counterclaims is that Great Lakes has no factual basis for any of its fraud and conspiracy counterclaims or third-party claims. As Movants assert in their Motion:

> Now with substantial deposition discovery in this matter, it has become apparent that there are no facts or law supporting [Great Lakes'] insurance fraud and related claims. Furthermore, from the October 6, 2017 letter from Great Lakes, it would appear that the counterclaims were brought to coerce Plaintiff into abandoning its claims and allowing CAG to adjust [the] claim without further consequence.

(Dkt. #190 at 4.) Or, as summarized in the Movant's Conclusion to their Motion, "Movants seek to amend their answer to Counterlcaim Plaintff's Counterclaims as those counterclaims are without legal and factual merit and were brought for the improper purpose of intimidating Plaintiff to abandon its lawful claims for insurance bad faith. . . . The Court should grant Plaintiff's Motion to protect it from improper retaliatory litigation." (*Id.* at 15.)

The Court heard oral argument on the Motion to Amend on December 14, 2018. At that time, I cited to the Parties a number of additional potentially relevant legal authorities, including published cases and a law review article, and gave the parties time to submit additional briefs addressing those authorities. The Parties submitted supplemental briefs on December 21, 2018. I have reviewed the proposed amendments, the original and supplemental briefing, and considered the arguments presented at oral argument.

## 2. STANDARD FOR GRANTING MOTION TO AMEND

A party may amend a pleading by consent of the other parties or by leave of court. Fed. R. Civ. P. 15(a). Leave to amend is to be freely given when justice so requires. *Id.* Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing parties, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allow, or futility of amendment. *Frank v. U.S.W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, I find that there was no undue delay, bad faith or dilatory motive. The only reason for denying amendment would be futility. If a pleading, as amended, could not withstand a motion to dismiss, then the amendment should be denied as futile. *TV Communications Network, Inc., v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992). *See also Glick v. Koenig*, 766 F.2d 265 (7th Cir. 1985) (holding that district court is justified in denying a motion to amend the pleadings pursuant to rule 15(a) if the proposed amendment could not withstand a motion to dismiss). Thus, to determine whether Movants should be entitled to amend their respective pleadings to

add claims of malicious prosecution and abuse of process against Great Lakes, I need to analyze whether these two discrete claims, as pled, could survive a motion to dismiss under the Rule 12(b)(6) standard.

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they

plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible

claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting

factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th

Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.' Nor does the

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Id.* (citation omitted).

### 3. MOVANTS' CLAIM FOR MALICIOUS PROSECUTION IS NOT YET RIPE, WOULD NOT SURVIVE A MOTION TO DISMISS, AND AMENDMENT TO ADD THE CLAIM SHOULD BE DENIED AS FUTILE

In Colorado, to prevail on a claim for malicious prosecution, the following

elements must be satisfied: (1) the defendant contributed to bringing a prior action

against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) there was no

probable cause to bring the prior action; (4) malice; and (5) damages. *Hewitt v. Rice*,

154 P.3d 408, 411 (Colo. 2007). *See also* CJI-Civ. 17:1 (2017). Element two—that the

prior action ended in favor of the plaintiff—is referred to as the "favorable termination"

element. "The requirement of favorable termination is important because the statute of

limitations begins running at the point of favorable termination, and favorable

termination is a substantive element" of the claim. *Hewitt*, 154 P.3d at 412 (citing Dan

B. Dobbs, *The Law of Torts*, §436 (2000)). The favorable termination requirement for

malicious prosecution helps separate a claim for malicious prosecution from the related,

but distinct, tort of abuse of process.  *Hewitt*, 154 P.3d at 414 (citing Timothy P. Getzoff, *Dazed and Confused in Colorado: The Relationship Among Malicious Prosecution, Abuse of Process, and the Noerr-Pennington Doctrine*, 67 U. Colo. L. Rev. 675, 685-686 (1996) ("*Dazed and Confused*")).

Importantly, the favorable termination element refers not just to a single discrete claim among many in a case, but to the "action" as a whole.  Accordingly, the Colorado Supreme Court has observed that a "malicious prosecution claim that arises out of the main action may not usually be brought as a counterclaim since the main action has not yet terminated in favor of the counterclaimant."  *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1119 n.4 (Colo. 1990), quoted in *Hewitt*, 154 P.3d at 412, and cited in *Thompson v. Maryland Casualty Co.*, 84 P.3d 496, 505 (Colo. 2004).  In this instance, Movants are seeking to bring a malicious prosecution action as a counterclaim while the main action is still pending.

Movants argue that they can satisfy the favorable termination element of a claim for malicious prosecution because Great Lakes' COCCA and RICO claims were dismissed.  The problem for Movants is that not *all* of Great Lakes' claims were dismissed.  As noted above, Great Lakes' non-racketeering counter-claims and third-party claims for fraud, civil conspiracy, civil theft, and declaratory judgment remain in this lawsuit.  Assuming, without deciding, that a dismissal without prejudice could constitute a "favorable termination" for the purpose of a claim for malicious prosecution, the fact remains that Great Lakes still has pending a number of claims against the movants which were not dismissed.  Thus, Great Lakes' "action" against Movants has

not yet terminated, and the favorable termination element of malicious prosecution cannot be proven.

Movants do cite a case from the Colorado Court of Appeals, *Eiteljorg v. Bogner*, 502 P.2d 970 (Colo. App. 1972), where the court addressed a malicious prosecution claim that was filed as a counterclaim. That case seemed to have proceeded somewhat irregularly, with the plaintiff filing suit against a defendant claiming breach of warranty in the quality of construction of a house. The defendant builder filed a counterclaim for malicious prosecution. At the conclusion of the plaintiff's evidence, the court found in favor of the defendant builder on the plaintiffs' claim. The Defendant then presented evidence on his malicious prosecution suit, and, at the conclusion of the trial, found in favor of the defendant. 502 P.2d at 971. But the only issue raised by the plaintiffs on appeal in that case was the amount of damages and costs. *Id.* The issue of whether a malicious prosecution counterclaim properly may be brought prior to the termination of the underlying lawsuit was neither raised nor ruled upon. A Colorado Court of Appeals decision from 1972 that does not even address the issue is a weak basis on which to ignore *Hewitt*'s directive that the underlying action must have terminated favorably before bringing a malicious prosecution claim.

Accordingly, I recommend that Movants' motion to amend to add a counterclaim for malicious prosecution against Great Lakes be denied because the counterclaim is not yet ripe. The "favorable termination" element cannot be established and, for that reason, amendment to add a malicious prosecution counterclaim would be futile.

### 4. MOVANTS' MOTION TO AMEND TO ADD A CLAIM FOR ABUSE OF PROCESS SHOULD BE DENIED AS FUTILE BECAUSE MOVANTS DO NOT ALLEGE IMPROPER USE OF THE LEGAL SYSTEM, AS IS REQUIRED TO SUPPORT A CLAIM FOR ABUSE OF PROCESS

The primary thrust of Movants' proposed counterclaims is that Great Lakes filed its own counterclaim and third-party claims without any basis in fact or law. This is sometimes referred to as "sham" litigation. But my reading of Colorado law suggests that to properly allege an abuse of process claim, there must be something more than merely the filing of a sham lawsuit. As noted above, the filing of a sham lawsuit—a suit without basis on fact or law—can be remedied via a malicious prosecution claim once the underlying action is terminated. Abuse of process, by contrast, requires something more than merely sham litigation.

"A valid abuse of process claim must allege (1) an ulterior purpose or the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210, 212 (Colo. App. 2017) (quoting *Mackall v. JP Morgam Chase Bank, N.A.,* 356 P.3d 946, 954 (Colo. App. 2014). There is no valid claim for abuse of process if the defendant's ulterior purpose was simply incidental to the proceeding's proper purpose. *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *aff'd*, 279 P.3d 659 (Colo. 2012). "The essential element of an abuse of process claim is the use of the legal proceeding in an improper manner; therefore, an improper use of the process must be established." *Active Release*, 413 P.3d at 212 (quoting *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011)). An abuse of process claim "focusses not on the alleged wrongdoer's motivations or intentions, but on whether or not he used the legal system for its intended purpose." *Id*. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the

complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or *if he knowingly brought suit upon an unfounded claim.*" *Id.* (emphasis added) (quoting *Sterenbuch*, 266 P.3d at 439) *See also Chemiti v. Kaja*, No. 13-CV-00360-LTB-KMT, 2015 WL 4979844 (D. Colo. Aug. 21, 2015) (same).

Thus, the gist of the tort of abuse of process is *not* that an action was commenced without justification. In contrast to malicious prosecution, the tort of abuse of process requires misusing or misapplying process itself, for an end other than that which it was designed to accomplish. The filing of a lawsuit (or a counterclaim), even a baseless or frivolous one, where the suit or counterclaim is followed through to its natural conclusion, is not using legal means improperly. *See GN Netsome, Inc. v. Callpod, Inc.*, No. 11-CV-03271-RBJ, 2012 WL 4086530 (D. Colo. 2012). If a party files "claims that are colorable on their face, and requests relief consistent with the claims alleged," there is no abuse of process, even if the claims are factually baseless. *Partimer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-CV-00586-MSK-MJW, 2010 WL 502718, at *3 (D. Colo. Feb 10, 2010) (footnote omitted). *See also Chaleph v. Canon City*, No. 13-CV-02166-NYW-KLM, 2015 WL 5093200, at *10-11 (D. Colo. Aug. 31, 2015) (no abuse of process if action is confined to regular and legitimate function, even if suit was knowingly brought on an unfounded claim).

To properly allege abuse of process there must be some allegation that, viewed objectively, the judicial process is being used in an improper manner. *See James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367 (Colo. App. 1994) (tort requires willful action in the use of that process which is not proper in the regular course of proceedings). "[A]lthough the litigant's motive may be important in determining

whether there was an 'ulterior purpose' for the use of the process, it still must be established that, viewed objectively, there was an improper *use* of the process." *Active Release Techniques*, 413 P.3d at 214 (quoting *Moore v. W. Forge Corp.*, 192 P.3d 427, 438 (Colo. App. 2007)).

Ordinarily, the overt act—the "improper manner" element—"takes the form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (quotations omitted). *See also Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006) (explaining that the improper purpose "is ordinarily a form of extortion in which a lawfully used process is perverted to an unlawful use"); *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998) (quoting *James H. Moore Assoc. Realty, Inc.*, 892 P.2d at 373, for proposition that "a claim for abuse of process must include an allegation of 'the use of process to accomplish a coercive goal which is not the intended legal purpose of the process'"). *See generally* Restatement (Second) Torts, § 682, comment b (no claim lies "when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose").

"The threat must be unrelated to the original action or outside the scope of the pleadings, and it usually represents the ulterior motive for filing the action." *Dazed and Confused* at 687 (citing *Aztec Sound Corp. v. W. States Leasing Co.,* 510 P.2d 897, 898 (Colo. App. 1973), which had found that the plaintiff had used a replevin action to extort money not legally owed by a defendant). *See also Tatonka Capital Corp.*, No. 16-CV-01141-MSK-NYW, 2016 WL 9344257 at *5 (D. Colo. Dec. 29, 2016) (explaining that "a

claim for abuse of process is extrinsic to the merits of a case").  For example, a party engages in abuse of process when he files liens against his adversary, not because the filer claims an interest in the property, but to compel the adversary to concede a child custody proceeding. *James H. Moore*, 892 P.2d at 373 (citing *Scozari v. Barone*, 546 So.2d 750 (Fla. App. 1989)).  Other examples of the kind of improper purpose that would support an abuse of process claim include filing a lawsuit against a man's wife in order to obtain a monetary payment from her husband without a valid claim, *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 171 (Colo. App. 2003), or filing a frivolous lawsuit in an inconvenient jurisdiction to obtain consent to transfer software to a third party in violation of a licensing agreement. *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200 (Colo. App. 1998).

This is one critical difference between the tort of abuse of process and the tort of malicious prosecution.  Malicious prosecution requires that the underlying action have been baseless—without probable cause.  But for abuse of process between private parties, there must be an overt action abusing or misusing the process; the filing of a baseless lawsuit is neither necessary nor sufficient.  It is therefore not an element of the tort of abuse of process that the initial litigation was terminated in favor of the abuse of process plaintiff.  The *Dazed and Confused* article identifies the difference between the two torts with clarity:

> First, the tort of malicious prosecution is available for those who have suffered a frivolous or groundless legal action initiated for improper motive. Second, the tort of abuse of process is available to remedy legal actions that, while having an adequate foundation in both fact and law, are nonetheless manipulated to achieve an improper collateral advantage not within the scope of the action itself.  While malicious prosecution focuses on frivolous lawsuits, abuse of process addresses a different sort of wrong.  Specifically, abuse of process focusses on litigants who use legal actions

improperly to extort some benefit, such as money, that is otherwise not warranted by the scope of the pleadings.

*Dazed and Confused* at 676. *See also* Dan B. Dobbs, et al., *The Law of Torts*, § 594 (Abuse of Process) (2d ed. June 2017 Update) ("If the plaintiff can show instigation of a suit for an improper purpose without probable cause and with termination favorable to the now-plaintiff, she has a malicious prosecution or wrongful litigation claim, *not a claim for abuse of process*." (emphasis added)).

As found at paragraphs 24-28 of the proposed amended pleadings, Movants' allege that Great Lakes had the following improper purposes for filing its COCCA, RICO, fraud and civil theft counterclaims:

24. These COCCA, RICO, fraud, and civil theft counterclaims (Defendants' Counterclaims") were brought without facts or law supporting their claims.

25. Defendants' Counterclaims were brought for the improper purpose of sowing discord amongst Plaintiff and third-party defendants.

26. Defendants' Counterclaims were brought for the improper purpose of allowing Defendants to continue to adjust the claim.

27. Defendants Counterclaims were brought for the improper purpose of forcing Plaintiff to relinquish its lawsuit.

28. Defendants' Counterclaims constitute sham litigation.

(Dkt. 190-22 at 6 ¶¶ 24-28.)

These allegations of improper purposes are repeated at paragraphs 65 through 70 of the Proposed Counterclaims:

65. The purpose behind Defendants filing of Defendants' Counterclaims was for the improper purpose of pressuring Plaintiffs to abandon their legal claims against Defendants and to allow Defendants to readjust the claim. This improper purpose is shown in Mark Davis' October 6, 2017 email to Plaintiff's counsel. Defendant Great Lakes also asserted its counterclaims for COCCA and RICO without knowledge of other instances of conduct between Shalz and Benglen for the

improper purpose of abusing the discovery process to get the information later without relevance discovery objections.

66. Upon information and belief, Defendants also filed Defendants' Counterclaims with the improper purpose of causing discord between Plaintiff and Third-Party Defendants.

67. Upon information and belief, Defendants' Counterclaims were attorney driven and not based on law or fact.

68. Defendants also acted with the improper purpose of sending a chilling message to insureds that if you sue them for improper adjusting conduct, they will use otherwise frivolous counterclaims to bully a Plaintiff into submission.

69. Defendants' sham activities adversely affect Plaintiffs' legal interests because they are costly to defend against and have no factual or legal basis.

70. Defendants' sham pleadings have caused and continue to cause Movants to suffer damages and losses, including but limited to, attorneys' fees, litigation expenses, injury to reputation, loss of business, mental anguish, fear, anxiety, humiliation and embarrassment.

*Id.* at 13-14.

In these paragraphs, there is repeated reference to Defendants' counterclaims as being "sham" pleadings, not "based on law or fact."  The "improper" purposes alleged relate to putting "pressure" on the Movants to dismiss their own claims, to use the litigation for "improper purpose of abusing the discovery process," "causing discord" between the Plaintiff and Third-Party Defendants, and for "sending a chilling message to insureds that if you sue [Great Lakes] for improper adjusting conduct."

None of these allegedly improper purposes are the kind of coercive improper purposes, extrinsic to the litigation process, that would support an abuse of process claim.  These are instead the kinds of consequences that are incidental and intrinsic to litigation.  Jointly suing adverse parties will likely always result in "discord" between the co-defendants.  Filing a counterclaim will necessarily put "pressure" on an adversary to

evaluate the costs and benefits of pursuing its own claims—and might have the effect of encouraging dismissal. But these are not the kind of purposes that are extrinsic to the litigation process.

"An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Family Mut. Ins. Co.*, 901 F. Supp. 2d 1289 , 1305 (D. Colo. 2012). A baseless lawsuit alone (whether called a "sham" or something else) does not qualify. *See Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d at 68 ("Without an improper act, there can be no improper use of process and therefore no abuse of process.").

The *Gustafson* case is emblematic of Movants' failure to adequately allege abuse of process. In *Gustafson*, an insurance agent left American Family and started his own competing insurance company. American Family sued for false advertising and deceptive trade practices. The agent later brought various claims against American Family, including an abuse of process claim. He alleged that American Family had sued to "coerce him" into closing his competing company. 901 F. Supp. 2d at 1305. The supposedly "improper use" of the process was the filing of a complaint that lacked factual merit. *Id.* Applying Colorado law, Judge Brimmer made clear that "in an abuse of process claim, even the filing of a lawsuit the filer knows to be unfounded is insufficient to demonstrate the improper use of legal process." *Id.* (citing *James H. Moore*, 892 P.2d at 373). The relief sought in American Family's underlying action was consistent with the claims American Family had alleged. There was no collateral objective different from what could have been obtained in the lawsuit itself. *Id.* at 1306.

Because the lawsuit was pursued to accomplish a result available in litigation and any ulterior motive was "incidental to the proceedings," Judge Brimmer granted summary judgment on the abuse of process claim. *Id.*

Another case that that parallels Movants' efforts is *Hertz v. Luzenac Group*, 576 F.3d 1103 (10th Cir. 2009). In *Hertz*, the Tenth Circuit affirmed the trial court's refusal to allow a Plaintiff to amend to add an abuse of process claim. The employee (Hertz) had sued a former employer for tortious interference with contract. The employer then counterclaimed, alleging misappropriation of trade secrets. Mr. Hertz sought to amend his complaint to add an abuse of process claim, insisting that his former employer's only basis for filing the misappropriation counterclaim was "to harass and intimidate [Hertz], to cause [Hertz] to cease his lawful competition with [the employer], to prevent [Hertz] from making a living, and to ruin his reputation." *Id.* at 1116. This mirrors in many ways Movants' claims that Great Lakes filed counterclaims only to send a chilling message and try to bully them into submission. The Tenth Circuit, quoting the Restatement (Second) of Torts § 682 cmt. b, and numerous Colorado cases, agreed there should be no amendment: "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose of benefit to the defendant." 576 F.3d at 1117. Because Hertz had not identified any "collateral advantage" to be gained by the employer, the trial court properly denied amendment to add a claim for abuse of process. *Id.* at 1118.

Another case on point is *Partimer Worldwide v. Siliconexpert Technologies, Inc.,* No. 09-cv-00586, MSK-MJW 2010 WL 502718 (D. Colo. 2010). There, Judge Krieger addressed the issue of an abuse of process counterclaim where the

defendant/counterclaim-plaintiff had alleged that the originating theft of trade secrets lawsuit was baseless and commenced only "to litigate [the Defendant] into oblivion . . . and thereby eliminate lawful competition by forcing his resignation or termination of employment[.]" *Id* at *1. Judge Krieger noted that "civil litigation is an inherently expensive and time-consuming process, and [the Defendant/counter-claim Plaintiff] may indeed be correct that [the Plaintiff] relishes the effect that fact may have upon him. But finding that [the Plaintiff] has an improper purpose for his actions is not the same as finding that he has used improper means to do so." *Id.* at *3. Because the abuse of process plaintiff had not alleged facts showing the use of "any particular legal tool improperly," the abuse of process claim failed as a matter of law. *Id.*

So it does in in this case too. Movants allege no *improper use* of the legal process. "The fact that there is an incidental motive or consequence of harassment or intimidation to a process that is otherwise invoked for its normal purpose does not give rise to a cognizable claim for abuse of process." *Tatonka Capital Corp.*, 2016 WL 9344257, at *5 (citing *Tara Woods*, 731 F. Supp. 2d at 1123, and *Sterebuch*, 266 P.3d at 439).

The *Dazed and Confused* article explains the existence of some historic confusion in Colorado jurisprudence between the torts of abuse of process and malicious prosecution. In 1984, the Colorado Supreme Court in *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo. 1984) ("*P.O.M.E.*") adopted a "sham" requirement as an *additional* element of an abuse of process claim when a lawsuit involves an issue of public concern. *See Dazed and Confused* at 696-98. *P.O.M.E.* recognized that in cases of public concern, a party with a valid claim has the

right to petition the government via the filing of a lawsuit, even if there exist improper ulterior motives or the lawsuit is coercive. But that right to petition does not exist if the lawsuit has no basis in fact or law (a "sham"). This holding follows the federal *Noerr-Pennington* doctrine, and ensures the First Amendment right to petition, even if the objective of that petitioning might be some arguably unlawful anti-competitive goal. *P.O.M.E.*, 677 P.2d at 1365. After the *P.O.M.E.* decision, for an abuse of process claim involving *a matter of public concern* to be successful, in addition to the historic requirements of improper means and ulterior motive, the underlying lawsuit must also be baseless—a sham. *See P.O.M.E.* at 1365, *Dazed and Confused* at 697-700.

Unfortunately, some Colorado lower courts misinterpreted *P.O.M.E.* to have reformulated the elements of abuse of process to suggest that all that is needed to support an abuse of process claim is for an underlying lawsuit to have been without foundation in law or fact—eliminating the other requirements. *See Dazed and Confused* at 695-98. But if the filing of a baseless lawsuit alone were sufficient to support an abuse of process claim, then the requirement of termination of the underlying lawsuit for malicious prosecution would be eliminated, and all malicious prosecution claims could be brought as abuse of process counterclaims. *See Dazed and Confused* at 698-99. And if this were the law, it would overturn decades of Colorado precedent distinguishing the torts of malicious prosecution and abuse of process.

It is not the law. In *Hewitt v. Rice*, the Colorado Supreme Court reaffirmed that "Colorado . . . has retained the separate torts of abuse of process and malicious prosecution including the element of favorable termination. 154 P.3d 408, 414 (Colo. 2007). And the overwhelming weight of authority in Colorado holds that the allegation

that a claim or a counterclaim is a "sham" is not enough to support the "improper use" element of the abuse of process claim.

There is one opinion from the District of Colorado, *Crew Tile Distrib., Inc. v. Porcelanosa Los Angeles, Inc.,* No. 13-CV-3206-WJM-KMY, 2016 WL 8609397, at *20 (D. Colo. 2016), which states that "a counterclaim for abuse of process may proceed where the counter-claimant raises a genuine issue of fact that the plaintiff's breach of contract claim was brought as 'sham' (*i.e.*, devoid of factual support and/or lacking a cognizable basis in law)." *Crew Tile* was an unusual case where the plaintiff was accused not just of filing a baseless claim, but of actually fabricating evidence (a forged signature on a document) to support the claim. *Id.* at *21. To the extent that there is no alleged forgery in this case, *Crew Tile* is distinguishable.

*Crew Tile* relied in part on the Colorado Supreme Court's decision in *Boyer v. Health Grades, Inc.*, 359 P.3d 25 (Colo. 2015) for the proposition that an abuse of process counterclaim may be brought when a plaintiff files a lawsuit without a factual basis and with no cognizable basis on law. The *Boyer* decision did involve an abuse of process counterclaim filed on the basis that the original lawsuit was a sham. The Colorado Supreme Court upheld the jury verdict in that case. But the specific holding in *Boyer* was that the heightened abuse of process requirement (the "sham" requirement) of *P.O.M.E.* does not apply in the context of purely private litigation. While the *Boyer* decision reinstated a trial verdict for abuse of process, *Boyer* did not address or consider whether the mere filing of a factually baseless lawsuit was sufficient to support an abuse of process counterclaim in that lawsuit. There is nothing in that opinion suggesting that the issue was raised, briefed, or argued by the parties. And the *Boyer*

decision does not even cite *Hewitt*. Had the Colorado Supreme Court in *Boyer* intended to overrule *Hewitt* and effectively eliminate the distinction between the torts of abuse of process and malicious prosecution, one would think it would have done so intentionally and expressly, rather than *sub silentio*.

Thus, reliance on *Crew Tile* and *Boyer* in this case is misplaced. To suggest that merely alleging "sham" litigation (i.e., a lawsuit without basis in either fact or law) can alone support an abuse of process counterclaim, would contradict the holdings of numerous Colorado cases, both state and federal, the Tenth Circuit's interpretation of Colorado law, the Restatement (Second) of Torts, and multiple treatises. Most important, this cannot be the law if, as the Colorado Supreme Court has expressly held, the torts of abuse of process and malicious prosecution are to remain distinct in Colorado. *See Hewitt*, 154 P.3d at 414.

The Colorado Court of Appeals' most recent definitive statement on this subject is *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210 (Colo. App. 2017). There, the court found that the trial court had erred in denying a motion for directed verdict on an abuse of process counterclaim. The *Active Release Techniques* counterclaimant had alleged the original lawsuit was baseless and being used as a means to "harass" the counterclaimant plaintiff/defendant and "run it out of business." Citing the *Dazed and Confused* article, the Court of Appeals found this insufficient to constitute an "abuse of a legal proceeding or court process." *Id.* at 213.

Maintaining the misuse of process element that distinguishes abuse of process, which can be brought as a counterclaim, from malicious prosecution, which requires favorable termination of the underlying suit, is important for the additional reason that

questions of a litigant's motive, and whether he had a good faith basis for bringing a lawsuit, often turn a litigant's attorneys into witnesses. Introducing this complication and potentially depriving clients of their chosen counsel must require something more than a defendant's mere allegation that the claims against him are baseless. *See generally* Philip L. Gordon, *Defeating Abusive Claims and Counterclaims for Abuse of Process*, 30 Colo. Lawyer 47, 49 (March 2001) (explaining that an abuse of process "counterclaim potentially converts counsel for both sides into necessary witnesses" because the "attorney whose client is charged with abuse of process . . . likely would be a necessary witness concerning the client's (or attorney's) alleged ulterior purpose for filing the complaint, as well as concerning the factual and legal under-pinnings for the action"). This danger is apparent in the instant case as the Movants appear to be suggesting that Great Lakes' counsel Mr. Mark Davis will be required to defend his own litigation conduct in the context of the proposed malicious prosecution claim. *See* Dkt. #190 at 14 (citing a letter of Mr. Mark Davis dated October 6, 2017 as evidence that there was no probable cause for bringing Great Lakes' COCCA and RICO counterclaims).

For the reasons stated above, I find that in Colorado, an abuse of process claim requires as an element "willful action in the use of that process which is not proper in the regular course of proceedings." *James H. Moore & Associates Realty*, 892 P.2d at 373. Alleging that the lawsuit is a "sham" is not a sufficient ground to support an abuse of process counterclaim.

**5. CONCLUSION**

For the reasons stated above, I RECOMMEND that Movants' motion to amend (Dkt. #190) be DENIED.  Movants will not be unfairly prejudiced by this denial.  To the extent that Movants believe Great Lakes has filed sham counterclaims, without any basis in fact or law, they retain the right to bring a malicious prosecution claim after the termination of the underlying action in Movants' favor.  But they cannot bring such a counterclaim in this case.  As to the abuse of process counterclaim, Movants do not allege an improper use of a legal proceeding or process that is extrinsic to, unrelated to, or outside the scope of the claims that are being pursued by Great Lakes.  Movants do not allege any plausible improper motive that is not incidental to the proper use of process.  Alleging the filing of a sham lawsuit is not enough to support an abuse of process counterclaim.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: January 9, 2019
      Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge