# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 17-cv-01595-CMA-NRN

PINON SUN CONDOMINIUM ASSOCIATION, INC., a Colorado non-profit corporation,

     Plaintiff and Counter Defendant,

v.

ATAIN SPECIALTY INSURANCE COMPANY, a foreign corporation,
INDIAN HARBOR INSURANCE COMPANY, a foreign corporation, and
GREAT LAKES INSURANCE, SE, *f/k/a* Great Lakes Reinsurance UK, Plc, a foreign corporation,

     Defendants.

---

GREAT LAKES INSURANCE, SE, *f/k/a* Great Lakes Reinsurance UK, Plc, a foreign corporation,

     Defendant and Third-Party Plaintiff,

v.

PINON SUN CONDOMINIUM ASSOCIATION, INC., a Colorado non-profit corporation.
CLAIM SOLUTIONS LLC, a Colorado limited liability company,
SCOTT BENGLEN,
SHALZ CONSTRUCTION LLC, a Colorado limited liability company, and
BRADLEY SHALZ,

     Third-Party Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court upon four motions for summary judgment:

1. Third-Party Defendants Shalz Construction LLC and Bradley Shalz's (together, "Shalz") Corrected Motion for Summary Judgment (Doc. # 204);

2. Third-Party Defendant Claim Solutions LLC and Scott Benglen's (together, "Claim Solutions") Motion for Summary Judgment (Doc. # 241);

3. Plaintiff/Counter Defendant Pinon Sun Condominium Association, Inc.'s ("Pinon Sun") Motion for Summary Judgment (Doc. # 246); and

4. Defendant/Third-Party Plaintiff Great Lakes Insurance, SE's ("Great Lakes") Motion for Summary Judgment (Doc. # 240).

For the reasons discussed herein, the Court grants Shalz's, Claim Solutions', and Pinon Sun's Motions for Summary Judgment and grants in part and denies in part Great Lakes' Motion for Summary Judgment.

## I.  BACKGROUND

The Court meticulously recited the factual and procedural background of this knotty dispute in its October 26, 2018 Order (Doc. # 189) and more recently in its September 25, 2019 Order (Doc. # 287).  That background information, as well as that laid out by United States Magistrate Judge N. Reid Neureiter in his January 9, 2019 Recommendation (Doc. # 237), is incorporated herein by reference.  This Order will recount only what is necessary to address the Motions for Summary Judgment.

Pinon Sun is the homeowners' association for a multi-family condominium property in Colorado Springs, Colorado.  (Doc. # 43 at 2–3.)  It sought and obtained an insurance policy (the "Policy") from Great Lakes on its property for the period of August

15, 2015, to August 15, 2016.  *See* (Doc. # 71-3).  Great Lakes was the primary insurer of the Policy, covering up to $10,000,000.00 for any given incident.  (Doc. # 43 at 25.) Defendant Atain Specialty Insurance Company ("Atain") and Defendant Indian Harbor Insurance Company ("Indian Harbor") were the excess carriers under the Policy.  (*Id.*); *see also* (Doc. # 49 at 2.)

Pinon Sun filed a claim under the Policy after its properties allegedly sustained hail and wind damage on July 28, 2016, (Doc. # 43 at 4), and retained Claim Solutions[1] as its public adjuster for the claims process (Doc. # 49 at 8).  Pinon Sun and Claim Solutions engaged in a year-long dispute with Great Lakes over the value of alleged hail damage and the cost of allegedly necessary repairs.  *See, e.g.*, (*id.* at 4–25.)  At some point over the course of that year, Pinon Sun and Claim Solutions hired Shalz[2] to repair the roofs, siding, and decks of its properties.  *See* (*id.* at 15; Doc. # 49 at 15.)  The estimates for and invoices from Shalz's work were central to Great Lake's ensuing claim investigation and dispute with Pinon Sun and Claim Solutions.  *See* (Doc. # 43 at 4–25.)

It is undisputed that Great Lakes made two actual cash value ("ACV") payments to Pinon Sun pursuant to the Policy: (1) a payment of $134,681.80 on September 14, 2016, and (2) a payment of $554,536.75 on September 30, 2016.  (Doc. # 244 at 152, 159); *see, e.g.*, (Doc. # 241 at 9; Doc. # 262 at 7.)  These are the **only** payments Great Lakes has made under the Policy.  It is also undisputed that Great Lakes' ACV

---

[1] Third-Party Defendant Scott Benglen is the managing partner of Third-Party Defendant Claim Solutions LLC.  (Doc. # 43 at 2.)
[2] Third-Party Defendant Shalz Construction LLC is managed by Third-Party Defendant Bradley Shalz.  (Doc. # 49 at 15.)

payments were "based upon estimates prepared by [Jim Black Construction Company ("JBC")], a large, well-established contractor specializing in property restoration" that was retained by the Great Lakes, Atain, and Indian Harbor's claim adjusting agent, the Claims Adjusting Group.  (Doc. # 240 at 4, 18.)  Great Lakes did not rely on any information provided by Pinon Sun, Claim Solutions, or Shalz in making the two ACV payments.  (Doc. # 204 at 7; Doc. # 229 at 6.)

Pinon Sun initiated this action on June 30, 2017 (Doc. # 1), and filed the operative Complaint against Great Lakes, Atain, and Indian Harbor (together, the "Insurers") on September 25, 2017 (Doc. # 43).  Pinon Sun asserts the following claims:

1. Breach of contract, against Great Lakes;
2. Breach of contract, against Atain;
3. Breach of contract, against Indian Harbor;
4. Violation of Colo. Rev. Stat. §§ 10-3-1115, -1116, for unreasonable delay or denial of payment of a claim for benefits, against Great Lakes;
5. Breach of the covenant of good faith and fair dealing, against Great Lakes; and
6. Violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101, et seq., against Great Lakes.

(*Id.* at 25–34; Doc. # 234 at 2.)

Great Lakes answered the Complaint on October 17, 2017, and asserts counterclaims and third-party claims against Pinon Sun, Claim Solutions, and Shalz:

1. Breach of contract, against Pinon Sun;
2. Fraud and misrepresentation; against Pinon Sun, Claim Solutions, and Shalz;
3. Insurance fraud, against Pinon Sun, Claim Solutions, and Shalz;
4. Civil conspiracy, against Pinon Sun, Claim Solutions, and Shalz;
5. Civil theft, against Pinon Sun, Claim Solutions, and Shalz;
6. Violation of the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-104, et seq., against Pinon Sun, Claim Solutions, and Shalz;
7. Violation of the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1962, against Pinon Sun, Claim Solutions, and Shalz; and

8.  A claim for declaratory judgment resolving the parties' contractual issues and declaring that the actions of Pinon Sun, Claim Solutions, and Shalz "during the claim process" "constitute fraud, misrepresentation and concealment."

(Doc. # 49 at 14–21.)  Atain and Indian Harbor jointly answered Plaintiff Pinon Sun's Complaint on October 21, 2017, and asserted the same eight counterclaims and third-party claims as Great Lakes against Pinon Sun, Claim Solutions, and Shalz.  (Doc. # 51.)

Pinon Sun, Claim Solutions, and Shalz together moved to dismiss the Insurers' counterclaims and third-party claims against them on October 31, 2017, and November 7, 2017.  (Doc. ## 52, 64.)  On June 29, 2018, United States Magistrate Judge Michael J. Watanabe recommended that the Insurers' COCCA and RICO claims be dismissed. (Doc. # 167.)  No party objected to the Magistrate Judge's Recommendation, and this Court affirmed and adopted the Recommendation on July 18, 2018.  (Doc. # 174.) Accordingly, the Insurers' COCCA and RICO claims were dismissed.  (*Id.*)

On October 31, 2018, Pinon Sun and Claim Solutions filed a Joint Motion to Amend Answer to Add Counterclaims Against Defendants, seeking to add claims of abuse of process and malicious prosecution against the Insurers.  (Doc. # 190.)  Atain and Indian Harbor subsequently withdrew all of their remaining counterclaims and third-party claims.  *See* (Doc. ## 225, 228, 230, 234.)  The Court denied Pinon Sun and Claim Solutions' request for leave to assert these additional claims on September 25, 2019.  (Doc. # 287.)

On December 27, 2018, all parties to this action jointly filed a Status Report regarding the remaining claims.  (Doc. # 234.)  The following claims remain:

**Pinon Sun's claims:**

1. Breach of contract, against Great Lakes;
2. Breach of contract, against Atain;
3. Breach of contract, against Indian Harbor;
4. Violation of Colo. Rev. Stat. §§ 10-3-1115, -1116, for unreasonable delay or denial of payment of a claim for benefits, against Great Lakes;
5. Breach of the covenant of good faith and fair dealing, against Great Lakes; and
6. Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq., against Great Lakes.

**Great Lakes' claims**:
1. Breach of contract, against Pinon Sun;
2. Fraud and misrepresentation; against Pinon Sun, Claim Solutions, and Shalz;
3. Insurance fraud, against Pinon Sun, Claim Solutions, and Shalz;
4. Civil conspiracy, against Pinon Sun, Claim Solutions, and Shalz;
5. Civil theft, against Pinon Sun, Claim Solutions, and Shalz; and
6. A claim for declaratory judgment resolving the parties' contractual issues and declaring that the actions of Pinon Sun, Claim Solutions, and Shalz "during the claim process" "constitute fraud, misrepresentation and concealment," against Pinon Sun.

(*Id.* at 2.)

On November 14, 2018, Shalz moved for summary judgment on all four third-party claims Great Lakes asserts against it. (Doc. # 204.) Great Lakes filed its Response on December 17, 2018 (Doc. # 229), to which Shalz replied on January 7, 2019 (Doc. # 236).

On January 25, 2019, Claim Solutions moved for summary judgment on all four of Great Lakes' third-party claims against it. (Doc. # 241.) Great Lakes responded in opposition to Claim Solutions' Motion for Summary Judgment on February 18, 2019. (Doc. # 262.) Claim Solutions filed its Reply on March 1, 2019. (Doc. # 264.)

Pinon Sun filed its Motion for Summary Judgment on the same claims—Great Lakes' counterclaims for fraud and misrepresentation, insurance fraud, civil conspiracy,

and civil theft—on January 28, 2019. (Doc. # 246.) Pinon Sun does **not** seek summary judgment on Great Lakes' counterclaims of breach of contract and for a declaratory judgment. *See generally* (*id.*) Great Lakes filed its Response on February 15, 2019 (Doc. # 253), to which Pinon Sun replied on March 1, 2019 (Doc. # 268). Pinon Sun's summary judgment filings are nearly identical to those filed by Claim Solutions.

Finally, on January 25, 2019, Great Lakes moved for summary judgment on the four claims Pinon Sun asserts against it. (Doc. # 240.) Pinon Sun responded in opposition on February 15, 2019. (Doc. # 252.) Great Lakes replied in support of its Motion for Summary Judgment on March 1, 2019. (Doc. # 265.)

Neither Atain nor Indian Harbor seeks summary judgment on Pinon Sun's breach of contract claims against them.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the non-moving party—including all reasonable inferences from that evidence. *Id.* However, conclusory statements based merely on

conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of genuine dispute of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id.*; *Celotex Corp.*, 477 U.S. at 324. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, . . . specific exhibits incorporated therein," *id.*, or any other kind of "evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," *Celotex Corp.*, 477 U.S. at 324 (emphasis added).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.   ANALYSIS

**A.   PINON SUN'S, CLAIM SOLUTIONS', AND SHALZ'S MOTIONS FOR SUMMARY JUDGMENT**

Because Pinon Sun, Claim Solutions, and Shalz all move for summary judgment on the same four claims Great Lakes asserts against them and they make substantially similar arguments, the Court addresses their Motions for Summary Judgment together.

1.   Great Lakes' fraud and misrepresentation claim

Great Lakes asserts that Pinon Sun, Claim Solutions, and Shalz "made false representations of material fact to Great Lakes regarding the actual cost and scope of repairs" to Pinon Sun's property.  (Doc. # 49 at 15.)  It contends that Pinon Sun, Claim Solutions, and Shalz made these false representations "with the intent that Great Lakes would act upon them by making payments . . . that were not due to Pinon Sun, as it [sic] exceeded the cost and scope of repairs necessary to remedy any actual hail damage." (*Id.* at 16.)  Great Lakes states that it "did, in fact, rely on the false representations made by Pinon Sun and its agents" and that as "[a]n approximate result of [its] reliance on these false representation," it was damaged in the amount of $689,218.55, the total of the two ACV payments it made under the Policy "in connection with the cost of repairs." (*Id.*)

To succeed on its common law fraud and misrepresentation claim, Great Lakes must prove the following five elements:

> (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff.

*Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 26 (citing *Vinton v. Virzi*, 2012 CO 10, ¶ 15). The Colorado Supreme Court has recognized that the fifth element has "three discrete sub-parts, requiring the plaintiff to prove separately actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused its damages." *Id.* (citing CJI-Civ. 19:1 (2013)).

Pinon Sun, Claim Solutions, and Shalz all seek summary judgment on Great Lakes' common law fraud and misrepresentation claim on the basis that Great Lakes is unable to show the fifth element of the claim, i.e., that Great Lakes actually and reasonably relied on their statements and that Great Lakes' reliance caused it damages. (Doc. # 246 at 17; Doc. # 241 at 16; Doc. # 204 at 9.) Pinon Sun and Claim Solutions also argue that Great Lakes' common laud fraud and misrepresentation claim fails because Great Lakes cannot prove that they made false representations of material fact. (Doc. # 246 at 13; Doc. # 241 at 12.)

Pinon Sun, Claim Solutions, and Shalz are entitled to summary judgment on Great Lakes' fraud and misrepresentation claim because Great Lakes does not set forth specific facts showing a genuine issue of material fact regarding the fifth element of its claim—its purported reliance on Pinon Sun's, Claim Solutions, and Shalz's allegedly false representations. Great Lakes' pleading simply states that it "did, in fact, rely on the false representations" and that as a result of its reliance, it made the two ACV payments to Pinon Sun in the amount of $689,218.55. (Doc. # 49 at 16.) Great Lakes does not set forth any specific facts regarding how it relied on Pinon Sun's, Claim Solutions', and/or Shalz's representations to determine the amount of its ACV payment.

In fact, Great Lakes does just the opposite in its filings.  It repeatedly states that it **relied entirely on its own contractor**'s estimates to determine the value of the ACV payments it owed Pinon Sun.  *See, e.g.*, (Doc. # 240 at 5, 18) ("The payment of the uncontested [ACVs] in September 2016 was based upon estimates prepared by JBC," which was retained by the Insurers' claim adjusting agent.)  And in its Response to Shalz's Motion for Summary Judgment, Great Lakes concedes that it did not rely on information provided by Shalz, Pinon Sun, or Claim Solutions, but rather, based its payments wholly on "estimates from the Insurers' preferred contractor [and] their own retained experts."  (Doc. # 204 at 7; Doc. # 229 at 6.)  Given that Great Lakes does not assert **any** specific facts to support its bare, conclusory allegation that it "did, in fact, rely on the false representations" made by Pinon Sun, Claim Solutions, and/or Shalz, the Court concludes that there is no genuine issue for trial on the fifth element of Great Lakes' common law fraud and misrepresentation claim.

Somewhat perplexingly, Great Lakes argues on summary judgment that though "it generally agrees with the usual elements of fraud and misrepresentation," which the Court laid out at the beginning of this subsection, it "need not show reliance" to prevail on its claim.  (Doc. # 262 at 18, 20.)  In support of this position, Great Lakes relies entirely on two cases, *American Diver's Supply & Manufacturing Corporation v. Boltz*, 482 F.2d 795, 797 (10th Cir. 1973), and *Frontier Exploration, Inc. v. American National Fire Insurance Company*, 849 P.2d 887 (Colo. App. 1992).  (Doc. # 229 at 10–11.) These cases are not persuasive, and the Court squarely rejects Great Lakes' argument that it need not show reliance.  First, as Shalz cogently explains in its Reply (Doc. # 236

at 5), the Colorado Court of Appeals in *Frontier Exploration, Inc.* concluded that there was adequate evidence to support the jury's verdict on favor of an insurer on its fraud counterclaim against its insured. 849 P.2d at 892. The Court of Appeals unequivocally stated, "False representation requires, *inter alia*, an intent to deceive by the one making the representation and **justifiable reliance** by the one to whom the representation is made." *Id.* at 891 (emphasis added) (citing CJI-Civ. 3rd 19:1 (1989); *Forsyth v. Associated Grocers of Colo., Inc.*, 724 P.2d 1360 (Colo. App. 1986)). After reviewing the evidence presented at trial, the Court of Appeals "disagree[d] with [the insured's contention that the record does not support that [the insurer] relied on the undisclosed facts." *Id.* at 892. In short, no part of the Court of Appeals *Frontier Exploration, Inc.* opinion supports Great Lakes' contention that reliance is not a required element of fraud and misrepresentation in the insurance context.

*American Diver's* is no more persuasive because it is plainly distinguishable from this case. *American Diver's* involved a policy **defense** based on a fraud provision contained in the insurance policy. 482 F.2d at 795. The Court of Appeals for the Tenth Circuit found that the insurer was not required to show reliance to raise this defense and based its conclusion on the fraud provision of the insurance policy:

> Both parties have admittedly bound themselves to the terms of the fire insurance contract, including the above "fraud clause," and thus we believe that this clause, on its face, should be dispositive of the appellant's allegations, for it is apparent that the provision not only prohibits "fraud" in the ordinary sense, but also willfully concealed or misrepresented material facts or circumstances concerning the subject of the insurance, i.e., the damaged or destroyed property, regardless of whether there has been detrimental reliance thereon.

*Id.* at 796.  The Tenth Circuit explicitly distinguished "common law" fraud claims from the matter before it because "the fraud clause [in the insurance policy] imposes different standards of responsibility and damages, . . . which removes this case from situations were a party seeks to rescind a contract without such a clause and thus must met all of the requirements of common law fraud."  *Id.* at 797.  The holding of *American Diver's* undoubtedly does not apply to Great Lakes' affirmative claim of common law fraud and misrepresentation.[3]

Finally, the great weight of authority confirms that reliance by the plaintiff is an element of the common law claim for fraud and misrepresentation.  *See, e.g.*, *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110 (Colo. 2011) (en banc) ("Our caselaw has recognized that the ignorance and reliance elements of a fraudulent concealment claim may be established by circumstantial evidence."); *Greene v. Thomas*, 662 P.2d 491, 495 (Colo. App. 1982) (citing *Morrison v. Goodspeed*, 68 P.2d 458 (1937)) ("A common element to all fraud actions is that there be reliance by plaintiff on the representation or the nondisclosure, and that such reliance must result in damage.").

The Court is satisfied that there is no genuine dispute regarding the lack of any reliance by Great Lakes on statements made or documents produced by Pinon Sun, Claim Solutions, and/or Shalz.  Because Great Lakes does not set forth specific facts suggesting that it did rely on their statements or documents in making the ACV payments and, thus, cannot satisfy the fifth element of the claim, the Court grants

---

[3] Great Lakes asserts fraud as an affirmative defense.  (Doc. # 49 at 5.)  The Court does not address the merits of that affirmative defense in this Order.

summary judgment in favor of Pinon Sun, Claim Solutions, and Shalz on Great Lakes'
common law fraud and misrepresentation claim.

2.    <u>Great Lakes' statutory insurance fraud claim</u>

Great Lakes asserts that "Colorado law makes it unlawful for any person to
knowingly provide false, incomplete, or misleading facts or information to an insurance
company for the purpose of defrauding . . . an insurance company under the penalty of
the denial of insurance and civil damages."  (Doc. # 49 at 16–17.)  Though Great Lakes
does not identify a specific provision of the Colorado Revised Statutes in the claim itself,
*see* (*id.*), elsewhere in its Answer and in its Responses to the Motions for Summary
Judgment, it identifies Colo. Rev. Stat. § 10-1-128 as the statute pursuant to which it
brings this claim (*id.* at 13; Doc. # 262 at 15; Doc. # 229 at 13).  Great Lakes contends
that "Pinon Sun and its agents, [Claim] Solutions and Shalz, conspired to commit
fraudulent insurance acts by knowingly, and with the intent to defraud, presented Great
Lakes with written statements in support of a claim for payment of a benefit . . . in
excess of the actual loss."  (Doc. # 49 at 17.)

The Court enters summary judgment in favor of Pinon Sun, Claim Solutions, and
Shalz on Great Lakes' statutory insurance fraud claim against them because Colo. Rev.
Stat. § 10-1-128 does not create a private cause of action.  Section 10-1-128, entitled
"Fraudulent insurance acts—immunity for furnishing information relating to suspected
insurance fraud—legislative declaration," first defines a fraudulent insurance act.  Colo.
Rev. Stat. § 10-1-128(1).  It then sets forth the General Assembly's declarations that
insurance fraud is expensive and poses risks to businesses and consumers and that the

State must "aggressively confront the problem of insurance fraud by facilitating the detection of and reducing the occurrence of fraud through stricter enforcement and deterrence and by encouraging greater cooperation among consumers, the insurance industry, and the state in coordinating efforts to combat insurance fraud." Colo. Rev. Stat. § 10-1-128(2)(a). It continues, "Colorado has addressed insurance fraud in various statutes, including but not limited to" the civil and administrative provisions of Title 10 and the Criminal Code. Colo. Rev. Stat. § 10-1-128(2)(b). The purpose of this section, it states, "is to further improve regulatory oversight of licensed persons who commit insurance fraud and to provide additional remedies to aggrieved persons." *Id.* Section 10-1-128 then sets forth four mandates: first, "[a]n allegation of a fraudulent insurance act shall not excuse an insurance company from its duty to promptly investigate a claim." Colo. Rev. Stat. § 10-1-128(3). Second, insurance companies shall and consumers may sent notice of judgment or settlements against licensed insurers to the appropriate state licensing board or to the Colorado Division of Insurance. Colo. Rev. Stat. §§ 10-1-128(4)(a)–(c). Third, "[e]very licensed insurance company doing business in Colorado shall prepare, implement, and maintain an insurance anti-fraud plan," Colo. Rev. Stat. §§ 10-1-128(5)(a)–(f), and fourth, each insurance company must print a statement regarding the illegality of fraud on all insurance applications, policies, and forms, Colo. Rev. Stat. §§ 10-1-128(6)(a)–(b). In sum, Section 10-1-128 does not explicitly create a private cause of action. And the parties do not cite, nor has this Court found, any case law that **directly** addresses whether a private cause of action exists under Section 10-1-128.

The Colorado Supreme Court has set forth a framework for determining whether a statute implicitly creates a private cause of action:

> Whenever a claimant alleges that a statute, ordinance, or regulation implicitly creates a private right of action, the critical question is whether the legislature intended such a result. For this reason, we will not infer a private right of action based on a statutory violation unless we discern a clear legislative intent to create such a cause of action.

*Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 923 (Colo. 1997), *as modified on denial of reh'g* (Oct. 20, 1997) (citing *Quintano v. Industrial Comm'n*, 495 P.2d 1137, 1139 (1972)). Where the statute "does not expressly provide for a private civil remedy,"

> [A] court must consider three factors in determining if a particular plaintiff has available a private cause of action based on a violation of the statute: "whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment; whether the legislature intended to create, albeit implicitly, a private right of action; and whether an implied civil remedy would be consistent with the purposes of the legislative scheme."

*Id.* (quoting *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 911 (Colo. 1992)).

*Parfrey* and *Gerrity Oil & Gas Corp.* are instructive of how Colorado courts apply this framework. In *Parfrey*, the Colorado Supreme Court was asked to determine whether Colo. Rev. Stat. § 10-4-609(2) (1987) "provided an insured under an automobile insurance policy a private cause of action against an insurer based on the insurer's failure to offer increased uninsured/underinsured motorist coverage as statutorily required." *Gerrity Oil & Gas Corp.*, 946 P.2d at 923–24 (citing *Parfrey*, 830 P.2d at 911). Considering the factors identified in the previous paragraph (*e.g.*, "There is no question that an insured is within the class of persons to be protected by Section 10-4-609(2)," *Parfrey*, 830 P.2d at 911), the Colorado Supreme Court concluded that:

[E]ven though the legislature did not expressly provide for a private civil remedy in enacting section 10–4–609(2), the failure to infer such a private cause of action would thwart the purposes of the statute because it would leave an insured "without a private civil remedy to redress the injuries and damages caused by an insurer's failure to discharge its statutory responsibility." A refusal to infer a private right of action for enforcing section 10–4–609(2) would have frustrated the statute's purposes because neither section 10–4–609(2) nor other relevant statutory provisions provided any "method for enforcing a violation" of the statute.

*Gerrity Oil & Gas Corp.*, 946 P.2d at 923–24 (citing *Parfrey*, 830 P.2d at 910–11).

In *Gerrity Oil & Gas Corp.*, the Colorado Supreme Court applied the same framework to Colo. Rev. Stat. § 34-60-114 (1995) and concluded that the statute did not provide surface owners a private right of action for an oil and gas operator's violation of statutes or regulations regarding the operator's use of the surface. 946 P.2d at 923–26. The Colorado Supreme Court noted that Section 34-60-114 was "not 'totally silent on the matter of remedy'" because its first sentence "preserve[d] a person's right to assert any cause of action for damages the person might have against a person who has violated a commission rule or a provision of the Act. It [did] not thereby create a private cause of action." *Id*. at 924. The Colorado Supreme Court also noted that while the purpose of the Act at issue was "to encourage the production of oil and gas in a manner that protects public health and safety and prevents waste," its "refusal to infer a private cause of action for violations of the Act [did] not frustrate these purposes" because the General Assembly had elsewhere "enacted a panoply of remedies to insure that oil and gas production in Colorado does not occur at the expense of the environment or surface owners." *Id*. at 925. Because "the creation of a private cause of action for violations of the Act or commission rules [was] inconsistent with both the plain language of [S]ection

34–60–114 and with other provisions of the Act," the Colorado Supreme Court held that Section 34–60–114 did not create a private remedy. *Id.* at 926.

Applying the Colorado Supreme Court's framework to Section 10-1-128 makes clear that the provision does not create a private right of action. Though an insurer is within the class of entities intended to be benefitted by Section 10-1-128, *see* Colo. Rev. Stat. § 10-1-128(2)(a) ("insurance fraud . . . places businesses at risk"), the second and third factors weigh against the existence of a private remedy. Similar to statute at issue in *Gerrity Oil & Gas Corp.*, Section 10-1-128 is "not 'totally silent on the matter of remedy,'" *see* 946 P.2d at 924; it explicitly cites to the "various statutes" in which "Colorado has addressed insurance fraud," including "the civil and administrative provisions found in . . . part 4 of article 2 of this title, parts 1, 2, 9, and 11 of article 3 of this title, and numerous other provisions of this title," *see* Colo. Rev. Stat. § 10-1-128(2)(b). Those statutory provisions, it continues, "impose . . . severe civil and criminal penalties on . . . persons who commit insurance fraud." *Id.* While the purpose of Section 10-1-128 is to "aggressively confront the problem of insurance fraud," s*ee* Colo. Rev. Stat. § 10-1-128(2)(a), this Court's inability to locate a private cause of action in it does not frustrate these purposes. As the Colorado Supreme Court explained in *Gerrity Oil & Gas Corp.* in the context of Section 34-60-114, *see* 946 P.2d at 925, the "legislature has enacted a panoply of remedies" to fight insurance fraud, including ones that expressly permit civil recovery, and a party may assert a common law fraud and misrepresentation claim, as Great Lakes does here. For these reasons, the Court concludes that Section 10-1-128 does not create a private cause of action. Great

Lakes' statutory "insurance fraud" claim asserted pursuant Section 10-1-128 necessarily fails.

Great Lakes' statement that "Federal and Colorado courts have recognized that [Section] 10-1-128 create a private cause of action" is incorrect. *See* (Doc. # 229 at 13.) The two cases upon which Great Lakes relies, *Hill v. Allstate Insurance Company*, No. 04-cv-0865, 2006 WL 173693, *4–5 (D. Colo. Jan. 24, 2006), and *State Farm Mutual Automobile Insurance Company v. Parrish*, 899 P.2d 285, 290 (Colo. App. 1994), *see* (Doc. # 229 at 13), did not confront whether Section 10-1-128 (or its predecessor) creates a private right of action. In *Hill*, the insurer alleged that its insureds made fraudulent representations on their application for insurance coverage and sought to rescind its policy pursuant to a Colorado Division of Insurance Regulation that permitted rescission of a policy "in case of fraud, as defined in [Section] 10-1-127" (Section 10-1-128's predecessor). 2006 WL 173693 at *3. No party challenged, nor did the Court examine, whether Section 10-1-127 provided the insurer a private right of action. *See id.* In *Parrish*, although the claim was brought by the insurer under Section 10-1-127, the Colorado Court of Appeals dismissed the claim and the insurers' other claims pursuant to Colorado Rule of Civil Procedure 9(b) for failure to plead them with particularity. 899 P.2d at 289–90. The Court of Appeals did not address the existence of a private cause of action under the statute. *See id.* The Court is therefore not persuaded by the two cases to which Great Lakes cites.

The Court finds that Section 10-1-128 does not establish a private cause of action. As such, Great Lakes' statutory insurance fraud claim based on that statute fails.

The Court enters summary judgment in favor of Pinon Sun, Claim Solutions, and Shalz on this claim.

    3.    <u>Great Lakes' civil conspiracy claim</u>

    Great Lakes next asserts that Pinon Sun, Claim Solutions, and Shalz "conspired by agreeing to fraudulently assert an insurance claim for an amount in excess of the actual hail loss."  (Doc. # 49 at 17.)  It alleges that "[i]n furtherance of this conspiracy," Pinon Sun, Claim Solutions, and Shalz "performed an overt act" by "submit[ing] claims as well as signed Sworn Proofs of Loss in which they knowingly claimed damages under the [P]olicy for a loss in excess of the actual and eventual costs of repairs."  (*Id.*)  As a "proximate result of this conspiracy," Great Lakes alleges it "suffered damages to be proven at trial."  (*Id.*)

    "To establish a civil conspiracy in Colorado, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result."  *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)).  As to the third element, the Court "will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff."  *Id.* (citing *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977)).  With respect to the fourth element, "the purpose of the conspiracy must involve an unlawful act or unlawful means."  *Id.* (citing *Contract Maintenance Co. v. Local No. 105*, 415 P.2d 855, 857 (Colo. 1966)).

Pinon Sun, Claim Solutions, and Shalz all argue that they are entitled to summary judgment on Great Lakes' civil conspiracy claim because Great Lakes cannot show either the fourth element, an unlawful overt act, or the fifth element, damages. (Doc. # 246 at 18; Doc. # 241 at 17; Doc. # 204 at 12.)  The Court agrees.

With respect to the fourth element, Great Lakes' civil conspiracy claim rests on the its fraud claims; in other words, the unlawful overt act it accuses Pinon Sun, Claim Solutions, and Shalz of is common law fraud and/or statutory insurance fraud.  (Doc. # 262 at 23 ("the underlying unlawful act, both statutory and common law insurance fraud, . . . "); *see* (Doc. # 49 at 17.)  But as the Court discussed above in Sections III(A)(1) and (2), those fraud claims fail as a matter of law.  For example, Great Lakes' common law fraud claim fails because Great Lakes does not allege that it relied on any representations by Pinon Sun, Claim Solutions, and/or Shalz in determining the amount of the ACV payments it made to Pinon Sun.  Its ACV payments were based entirely on its own contractor's estimates.  Because Great Lakes' fraud claims fail, Great Lakes has not demonstrated the existence of a genuine dispute regarding whether Pinon Sun, Claim Solutions, and Shalz engaged in "an unlawful overt act."  Great Lakes cannot establish the fourth element of its civil conspiracy, and the Court consequently enters summary judgment in favor of Pinon Sun, Claim Solutions, and Shalz on this claim.

4.  Great Lakes' civil theft claim

Finally, Great Lakes alleges that Pinon Sun, Claim Solutions, and Shalz are liable for civil theft because they "knowingly obtained or exercised control over insurance payments paid by Great Lakes . . . for damage in excess of the amount of the

loss," "did so without authorization and by deception," and "intended to permanently deprive Great Lakes of the benefit of the value of these insurance payments." (Doc. # 49 at 18.) Great Lakes seeks to recover "three times the amount of actual damages and its costs and attorney fees" pursuant to Colo. Rev. Stat. § 18-4-405. (*Id.*)

"Civil theft is established where: (1) [the] defendant knowingly obtained control over [the] plaintiff's property without authorization or by threat or deception; and (2) with the specific intent to permanently deprive [the] plaintiff of the benefit of the property." *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 1119, 1161 (D. Colo. 2016) (citing *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000)); *see* Colo. Rev. Stat. § 18-4-401(1)(a). As to the second element, "[t]he requisite intent may be inferred from the defendant's conduct and the circumstances of the case, but requires proof of [the] defendant's knowing use of the property inconsistent with the plaintiff's permanent use and benefit." *Id.* (citing *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009)).

The Court agrees with Pinon Sun, Claim Solutions, and Shalz that Great Lakes cannot establish the first element of its civil theft claim. *See* (Doc. # 246 at 19; Doc. # 241 at 18; Doc. # 204 at 13.) It is undisputed that Great Lakes has only paid out the two uncontested ACV amounts, totaling $689,218.55, to Pinon Sun. (Doc. # 244 at 152, 159); *see, e.g.*, (Doc. # 241 at 9; Doc. # 262 at 7.) It is also undisputed that Pinon Sun was entitled to these ACV payments under the Policy, **irrespective** of whether or not the hail loss damage is repaired, and that Great Lakes voluntarily made these payments to Pinon Sun. (Doc. # 204 at 7; Doc. # 229 at 6); *see* (Doc. # 241-2 at 7) (Policy provision allowing the insured to submit "a claim based on the [ACV] of the property lost

or damaged until the actual repair . . . has been completed"). Simply put, the ACV payments do not belong to Great Lakes. Without an ownership interest in the ACV funds, Great Lakes cannot maintain a civil theft claim against Pinon Sun, Claim Solutions, and Shalz. *See Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008) (stating that to maintain a civil theft claim, the plaintiff must prove "the requisite ownership or property interest in the funds"); Colo. Rev. Stat. § 18-4-401(1)(a).

The Court enters summary judgment in favor of Pinon Sun, Claim Solutions, and Shalz on Great Lakes' civil theft claim.

For the foregoing reasons, the Court grants Pinon Sun's, Claim Solutions', and Shalz's Motions for Summary Judgment (Doc. ## 246, 241, 204). Because it enters judgment in favor of Claim Solutions and Shalz on all claims asserted against them, the Court dismisses Claim Solutions and Shalz from this action.

**B.    GREAT LAKES' MOTION FOR SUMMARY JUDGMENT**

   1.   <u>Pinon Sun's claims of breach of contract, unreasonable delay or denial of payment, and breach of the covenant of good faith and fair dealing</u>

Because Pinon Sun's claims of breach of contract, unreasonable delay or denial of payment, and breach of the covenant of good faith and fair dealing substantially overlap, the Court addresses them together. In these three claims, Pinon Sun asserts that Great Lakes breached the Policy by "failing to conduct a proper investigation of the

loss and purposefully delaying payment of benefits due and owing under the Policy."
(Doc. # 43 at 25–29.)

A breach of contract claim requires the plaintiff to prove: (1) the existence of a
contract; (2) performance by the plaintiff or some justification for nonperformance;
(3) failure to perform the contract by the defendant; and (4) resulting damages to the
plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Pinon Sun asserts its claim of unreasonable delay and denial pursuant to Colo.
Rev. Stat. § 10-3-1115 and seeks damages pursuant to Colo. Rev. Stat. § 10-3-1116.
(Doc. # 43 at 27.)  Section 10-3-1115(1)(a) provides, "A person engaged in the business
of insurance shall not unreasonably delay or deny payment of a claim of benefits owed
to or on behalf of any first-party claimant."  An insurer's delay or denial was
unreasonable under this provision "if the insurer delayed or denied authorizing payment
of a covered benefit without a reasonable basis in that action."  Colo. Rev. Stat. § 10-3-
1115(2).  Section 10-3-1116(a) permits an insured whose claim was unreasonably
delayed or denied to "bring an action in a district court to recover reasonable attorney
fees and court costs and two times the covered benefit."

Finally, Pinon Sun's claim that Great Lakes breached the covenant of good faith
and fair dealing requires its to prove that: (1) the insurer acted unreasonably under the
circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity
of the insured's claim.  *Goodson v. Am. Standard. Ins. Co. of Wis.*, 89 P.3d 409, 415
(Colo. 2004).  "The reasonableness of the insurer's conduct must be determined

objectively, based on proof of industry standards." *Id.* (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)).

Upon review of Pinon Sun's and Great Lakes' filings and the evidence referenced therein, the Court determines that genuine issues of material fact preclude it from entering summary judgment on any of these three claims. Among the numerous genuine issues of material fact:

- When and if Great Lakes exhausted its aggregate limits of liability under the Policy and, therefore, cannot be liable under the claims, *see* (Doc. # 252 at 14);

- Whether Great Lakes' investigation of Pinon Sun's claim was timely and reasonable, based on industry standards; and

- Whether Pinon Sun has incurred damages as a result of Great Lakes' conduct.

As such, the Court denies Great Lakes' Motion for Summary Judgment with respect to Pinon Sun's claims of breach of contract, unreasonable delay or denial of payment, and breach of the covenant of good faith and fair dealing.

2.    Pinon Sun's Colorado Consumer Protection Act claim

Pinon Sun alleges that Great Lakes violated the CCPA by engaging "in unfair and deceptive trade practices in the course of its adjustment of Pinon Sun's claim." (Doc. # 252 at 23); *see* (Doc. # 43 at 29–34.) Pinon Sun posits that Great Lakes' unfair and deceptive trade practices included "misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue," "refusing to pay claims without conducting a reasonable investigation based upon all available information," and "not attempting in good faith to effectuate prompt, fair, and equitable settlement of the claim

in which liability has become reasonably clear." (Doc. # 43 at 30–31.) It states that Great Lakes' conduct significantly impacts the public "due to the public nature of the insurance industry." (*Id.* at 32–33.)

The CCPA "deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (citing *Showpiece Homes, Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 50–51 (Colo. 2001)).

> To prove a private cause of action under the CCPA, a plaintiff must show:
> (1) that the defendant engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
> (5) that the challenged practice caused the plaintiff's injury.

*Id.* (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). Remedies available under the CCPA include injunctive relief, civil penalties including treble damages, and attorney fees. *Id.* (citing *Showpiece Homes*, 38 P.3d at 51; Colo. Rev. Stat. § 6-1-110; Colo. Rev. Stat. § 6-1-113).

With respect to the third element of a CCPA claim, the public impact requirement, case law is clear that "if a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Id.* at 149. The Colorado Supreme Court's cases "outline relevant considerations to determine whether a challenged practice significantly impacts the public within the context of a CCPA claim." *Id.*

These considerations include (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Id.* (citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)). No single factor is determinative, nor is this an exhaustive list of considerations. *One Creative Place, LLC v. Jet Center Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011).

Great Lakes moves for summary judgment on Pinon Sun's CCPA claim on the grounds that Pinon Sun cannot prove the third element of the claim, that Great Lakes' alleged actions significantly impacted the public. (Doc. # 240 at 27–29.) The Court agrees that Pinon Sun fails to demonstrate this element. Its reference to "the public nature of the insurance industry" does not set forth specific facts showing a genuine issue for trial. *See* (Doc. # 43 at 32–33.) The Court is persuaded by *Brodeur v. American Home Assurance Company*, 169 P.3d 138, 155 (Colo. 2007), in which the Colorado Supreme Court considered whether "the public nature of the workers' compensation insurance program is sufficient to satisfy the 'public impact' element" of a CCPA claim. The Colorado Supreme Court rejected the plaintiff's argument that the public nature of the insurance program per se satisfies the public impact element:

We have never found that the public nature of a particular business satisfies per se the public impact element of a CCPA claim. Under the CCPA, it is not enough that the defendant's industry affects the public interest. Adopting an interpretation that the public impact element of the CCPA could be satisfied simply if the defendant's industry "affects the public interest" would render this requirement and our discussion of the public impact considerations in *Rhino Linings* meaningless. As we have emphasized before, to constitute the public impact contemplated by the CCPA, the challenged **practice** must significantly impact the public. See *Crowe [v. Tull*, 126 P.3d 196, 204 (Colo. 2006)] ("The crux of a CCPA claim is a deceptive

> trade practice, which, by definition, must be intentionally inflicted on the consumer public."); *Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998) ("The CCPA regulates practices which because of their nature, may prove injurious, offensive, or dangerous to the public.") (citations omitted). Although the public nature of the business may be a factor to consider when determining if the challenged practice affects the public, it is not enough, standing alone, to satisfy the public impact element of the CCPA.

*Brodeur*, 169 P.3d at 155–56. Under this logic, Pinon Sun's invocation of the "public nature of the insurance industry" does not satisfy the third element's public impact element.

The Court enters summary judgment on Pinon Sun's CCPA claim in favor of Great Lakes.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Third-Party Defendants Shalz Construction LLC and Bradley Shalz's Corrected Motion for Summary Judgment (Doc. # 204) is GRANTED.

2. Third-Party Defendants Shalz Construction LLC and Bradley Shalz are dismissed from this action.

3. Third-Party Defendant Claim Solutions LLC and Scott Benglen's Motion for Summary Judgment (Doc. # 241) is GRANTED.

4. Third-Party Defendant Claim Solutions LLC and Scott Benglen are dismissed from this action.

5. Plaintiff/Counter Defendant Pinon Sun Condominium Association, Inc.'s Motion for Summary Judgment (Doc. # 246) is GRANTED.

6. Defendant/Third-Party Plaintiff Great Lakes Insurance, SE's Motion for Summary Judgment (Doc. # 240) is GRANTED IN PART as to Pinon Sun's CCPA claim and DENIED IN PART as to Pinon Sun's claims of breach of contract, unreasonable delay or denial of payment, and breach of the covenant of good faith and fair dealing.

7. The following claims remain:

    a. Pinon Sun's breach of contract claim against Atain;

    b. Pinon Sun's breach of contract claim against Indian Harbor;

    c. Pinon Sun's breach of contract claim against Great Lakes;

    d. Pinon Sun's unreasonable delay or denial of payment claim against Great Lakes;

    e. Pinon Sun's breach of the covenant of good faith and fair dealing claim against Great Lakes;

    f. Great Lakes' breach of contract claim against Pinon Sun; and

    g. Great Lakes' request for declaratory judgment against Pinon Sun.


DATED:  September 27, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge