IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01595-CMA-NRN

PINON SUN CONDOMINIUM ASSOCIATION, INC., a Colorado non-profit corporation,

    Plaintiff and Counter Defendant,

v.

ATAIN SPECIALTY INSURANCE COMPANY, a foreign corporation,
INDIAN HARBOR INSURANCE COMPANY, a foreign corporation, and
GREAT LAKES INSURANCE, SE, *f/k/a* Great Lakes Reinsurance UK, Plc, a foreign corporation,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND THIRD-PARTY DEFENDANTS' MOTION TO PRECLUDE TESTIMONY OF ROBERT H. PRATT AND FIRST MOTION IN LIMINE**

---

This matter is before the Court on Plaintiff and Third-Party Defendants' Motion to Preclude the Testimony of Robert H. Pratt ("Motion to Preclude Expert Testimony") and Movants' First Motion in Limine to Preclude Testimony Regarding Shalz Construction's Contract as Not Compliant with Colorado Law Pursuant to C.R.S. 6-22-104 ("Motion in Limine").[1] (Doc. ## 276, 277.) Both Motions have been fully briefed.[2] (Doc. ## 278–280,

---

[1] On September 27, 2019, all Third-Party Defendants—i.e., Claim Solutions LLC, Scott Benglen, Shalz Construction, and Bradley Shalz—were dismissed from the instant case as a result of this Court's Order on Motions for Summary Judgment. (Doc. # 288.) For the purposes of this Order, the Court refers to Pinon Sun Condominium Association, Inc., as "Plaintiff" or "Movant."

[2] Movant requests an evidentiary hearing on the Motions (Doc. # 276 at 15); however, the Court finds that a hearing is not warranted.

283–284.) For the reasons that follow, the Court grants in part and denies in part both the Motion to Preclude Expert Testimony and the Motion in Limine.

I. **BACKGROUND**

The Court meticulously recited the factual and procedural background of this dispute in its October 26, 2018 Order (Doc. # 189) and more recently in its September 25, 2019 Order (Doc. # 287). The Court therefore recounts only the facts necessary to address the Motions.

Pinon Sun Condominium Association, Inc. ("Plaintiff" or "Movant") is the homeowners' association for a multi-family condominium property in Colorado Springs, Colorado. (Doc. # 43 at 2–3.) Plaintiff hired Muldoon Associates, Inc. ("Muldoon") as the management company for that property. Plaintiff and Muldoon signed the Muldoon Associates, Inc. Management Agreement with Pinon Sun Condominiums ("Management Agreement"), which was in effect at all times relevant to this case. Rudy Thompson was an employee of Muldoon when the Management Agreement was executed.

Plaintiff sought and obtained an insurance policy ("the Policy") from Defendant Great Lakes Insurance, SE ("Great Lakes") on its property for the period of August 15, 2015, to August 15, 2016. *See* (Doc. # 71-3). Great Lakes was the primary insurer of the Policy. (Doc. # 43 at 25.) Defendant Atain Specialty Insurance Company ("Atain") and Defendant Indian Harbor Insurance Company ("Indian Harbor") were the excess carriers under the Policy. (*Id.*); *see also* (Doc. # 49 at 2).

Plaintiff filed a claim under the Policy after its properties allegedly sustained hail and wind damage on July 28, 2016, and it retained Claim Solutions LLC ("Claim

2

Solutions") as its public adjuster for the claims process. (Doc. # 43 at 4; Doc. # 49 at 8.) Plaintiff and Claim Solutions engaged in a year-long dispute with Great Lakes over the value of the alleged hail damage and the cost of allegedly necessary repairs. *See, e.g.*, (*id.* at 4–25).

At some point over the course of that year, Rudy Thompson and Claim Solutions hired Shalz Construction LLC[3] to repair the roofs, siding, and decks of its properties. *See* (*id.* at 15; Doc. # 49 at 15). Rudy Thompson and Bradley Shalz signed a contract ("the Shalz Contract") on October 25, 2016, to have Shalz Construction LLC aid in the contracting and construction work associated with Plaintiff's claim. (Doc. # 190-16.)

Plaintiff initiated this action on June 30, 2017 (Doc. # 1), and it filed the operative Complaint against Great Lakes, Atain, and Indian Harbor (together, "the Insurers") on September 25, 2017 (Doc. # 43).

The Insurers then jointly retained Robert H. Pratt as an expert in construction and forensic cost estimation. Mr. Pratt filed three expert reports on September 6, 2018, October 18, 2018, and December 12, 2018, respectively. (Doc. # 276-2.) The various contracts between the parties are central to Mr. Pratt's expert reports and the Motions. *See* (Doc. # 43 at 4–25).

Movant filed the instant Motion to Preclude Expert Testimony on June 19, 2019, arguing that Mr. Pratt's opinions must be stricken under Federal Rules of Evidence 702 and 704 for lack of sufficient qualifications, failure to use reliable principles and methods, and offering impermissible legal conclusions. (Doc. # 276.) Atain and Indian

---

[3] Shalz Construction LLC is managed by Bradley Shalz. (Doc. # 49 at 15.)

3

Harbor responded in opposition on July 10, 2019. (Doc. # 279.) Great Lakes responded in opposition on July 10, 2019 (Doc. # 280), and attached a supplemental report including Mr. Pratt's testimonial history (Doc. # 280-1). Movant replied in support of its Motion on July 23, 2019. (Doc. # 284.)

Movant filed the instant Motion in Limine on June 25, 2019, arguing that any testimony applying the Colorado Roofing Statute (Colo. Rev. Stat. § 6-22-104) to the Shalz Contract is irrelevant and inadmissible. (Doc. # 277.) Great Lakes responded in opposition on July 9, 2019. (Doc. # 278.) Atain and Indian Harbor responded in opposition on July 16, 2019. (Doc. # 283.) Movant did not file a reply in support of its Motion.

## II. LEGAL STANDARDS

### A. MOTION TO PRECLUDE EXPERT TESTIMONY

Under *Daubert*, the trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401, and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008); F.R.E. 702 advisory comm. notes. This Court has discretion to evaluate whether an expert is helpful,

4

qualified, and reliable under Rule 702. *See Goebel*, 214 F.3d at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The requirement that testimony must be reliable does not mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.*

To be admissible, an expert's testimony must be helpful to the trier of fact. Fed. R. Evid. 702. To ensure testimony is helpful, "[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)); *see,*

5

*e.g.*, *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (report by proffered "liability expert," which read "as a legal brief," exceeded scope of an expert's permission to "opine on and embrace factual issues, not legal ones.").

Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under the "flexible" standard of Rule 702. *Velarde*, 214 F.3d at 1208–09; *Daubert*, 509 U.S. at 594.

**B.    MOTION IN LIMINE**

In ruling on the Motion in Limine, the Court applies the following standard:

> The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded. At trial, the court may alter its limine ruling based on developments at trial or on its sound judicial discretion. Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial only means that the court cannot decide admissibility outside the context of trial. A ruling in limine does not relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial.

*First Sav. Bank, F.S.B. v. U.S. Bancorp,* 117 F. Supp. 2d, 1078, 1082 (D. Kan. 2000).

### III.    ANALYSIS

**A.    MOTION TO PRECLUDE EXPERT TESTIMONY**

In its Motion to Preclude Expert Testimony, Movant argues that Mr. Pratt should be precluded from testifying as an expert because: (1) he lacks sufficient qualifications to opine on the issues in his reports, (2) his opinions are unsupported and unreliable, and (3) his opinions are impermissible conclusions of law. *See* (Doc. # 276). The Court has reviewed Mr. Pratt's expert reports (Doc. # 276-2) and will consider each objection in turn before addressing the related Motion in Limine.

1. <u>Qualifications</u>

First, Movant argues that Mr. Pratt is not qualified to offer the opinions in his expert reports. *See* (Doc. # 276). Specifically, Movant objects to Mr. Pratt's qualification to opine on agency, fiduciary duty, the contracts between the parties, and the applicability and effect of Colorado law on the conduct and contracts between the parties. (*Id.*) The Court finds that Mr. Pratt is generally qualified to testify as an expert witness, but all testimony regarding Colorado law is outside the scope of his qualifications.

Mr. Pratt has demonstrated, through his Curriculum Vitae and supplemental report, sufficient specialized knowledge, skill, and experience to offer most of his proposed testimony. (Doc. ## 276-1, 276-2); *see Daubert*, 509 U.S. at 592. Mr. Pratt is experienced in forensic cost estimation and damage calculation for insurance companies. (Doc. # 276-1 at 1.) Mr. Pratt also has experience acting as both an agent and a fiduciary in the construction industry. *See* (Doc. # 276-2). Mr. Pratt has general experience with construction contracts, including work in project management, contract administration, and construction claim services. (*Id.*) Mr. Pratt also has personal experience with the types of agreements made in this case through his work at Demand Construction Services, Inc., where he was responsible for forensic scheduling analysis and forensic cost estimation. (Doc. # 276-1.)

This Court is satisfied that Mr. Pratt is sufficiently qualified to offer the testimony in his reports that does not relate to Colorado law. Specifically, Mr. Pratt is qualified to testify to, *inter alia*, the actual costs of and related overcharging for Plaintiff's repairs

7

and what is present in or absent from the various contracts between the parties.[4] On these subjects, "to the extent there are any gaps or other flaws in the relevant qualifications of [Mr. Pratt], those gaps go to the weight and credibility to be accorded to [his] opinions and not to the admissibility of those opinions." *Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1655547, at *5 (D. Colo. Apr. 29, 2011).

However, Mr. Pratt is not qualified to opine on Colorado law, including the Colorado Revised Statutes. *See, e.g.*, *Pritchett v. I-Flow Corp.*, No. 09-CV-02433-WJM-KLM, 2012 WL 1059948, at *6 (D. Colo. Mar. 28, 2012) (finding expert witness with no formal legal training or education was not qualified to opine on legal duties, legal conclusions, and whether conduct was "legal" or "illegal"). Mr. Pratt is not an attorney, has no formal legal education, and testified that he is not an expert on Colorado contract law.[5] (Doc. # 276-3 at 39:6–9.) Further, his seemingly flawed interpretation of C.R.S. § 6-22-104, without any citation to authority to support his interpretation of the statute, raises concern for the Court as to the veracity of his legal opinions.[6]

Accordingly, paragraphs 22 through 25, which concern the Colorado Revised

---

[4] Although Mr. Pratt is generally qualified to provide expert testimony, some portions of his proposed testimony are precluded for lack of helpfulness to the trier of fact. *See infra* Section III(A)(3).

[5] The single contract law class Mr. Pratt took during college falls short of qualifying him to opine on the law.

[6] Mr. Pratt interprets the statute as limiting the amount a roofing contractor may recover if the roofing contract is found to be invalid. However, the text of the statute provides for what deposits or payments a roofing contractor may retain or recover in the event that a property owner rescinds their contract with the roofing contractor.

Statutes, are stricken from Mr. Pratt's report.[7] (Doc. # 276-2 at 10–11.) In addition, Mr. Pratt is precluded from offering the following testimony at trial:

- "Shalz' contract with the PSCA **does not comply with Colorado law as it** has no scope or price of the work." (*Id*. at 3);

- "the payment of the commission, service fee, or other consideration by Claims Solutions to Rudy Thompson may violate C.R.S. § 10-2-4173(6)." (*Id*. at 7);

- "the fact that Rudy Thompson had agreements with both Claims Solutions and Shalz Construction appears to create a financial interest in the work and the ability to direct the work by Claims Solution, **in violation of C.R.S. § 10-2-417(6)**" (*Id*. at 7);

- "Even under the non-compliant agreement between Shalz and PSCA. . . ." (*Id*. at 10);

- "The initial draw therefore exceeded the amount of funds that Shalz was entitled to, **even under the non-compliant contract form**." (*Id*. at 10);

- "This contract is signed by James Rothwell on August 30, 2016, **without a clear indication of his title or authority to execute this agreement on behalf of the Association, so it is possible but unlikely that it will be determined that he**

---

[7] Even if Mr. Pratt were qualified to offer these opinions, they would be inadmissible for lack of helpfulness to the trier of fact. *See, e.g.*, *Hygh v. Jacobs,* 961 F.2d 359, 361–62 (2d Cir. 1992) ("expert testimony is not admissible to inform the trier of fact as to the law that it will be instructed to apply to the facts in deciding the case."); *Killion*, 761 F.3d at 592 (report by proffered "liability expert," which read "as a legal brief" exceeded scope of an expert's permission to "opine on and embrace factual issues, not legal ones."). Whether the Shalz Contract is void, voidable, or unenforceable under the law is a matter to be determined by the Court and is not appropriate witness testimony.

**executed this agreement as an individual**." (*Id*. at 6);

- "Failure to do this would have been a violation of the requirements that the Pikes Peak Regional Building Department would have imposed on the work at the time of inspecting the roofs." (*Id*. at 27).

Lastly, Mr. Pratt is precluded from testifying that Paragraph 6.G of the Management Agreement between Plaintiff and Muldoon is "either a formatting anomaly" or has been altered. (*Id*. at 4–5.) As Mr. Pratt admits, "additional investigation and discovery would be necessary to determine if this possible explanation might be accurate." Mr. Pratt is not qualified to offer this opinion, which is speculative at best.

2. <u>Reliability</u>

Next**,** Movant argues that Mr. Pratt's expert opinions are not a product of reliable principles and methods. (Doc. # 276 at 11–13); *see Daubert*, 509 U.S. at 592–94. The Court disagrees and is satisfied that Mr. Pratt's admissible opinions, as defined in this Order, are sufficiently reliable.

Mr. Pratt evaluated documents provided by the parties, photographs, and deposition transcripts, and he conducted a site visit of the building at issue. (Doc. # 276-2 at 1.) Mr. Pratt appropriately applied his own "knowledge, education, skill, training, experience and expertise" in order to reach his opinions in this case. (*Id*. at 2.) He applied his knowledge of construction contracts—gained through project management, contract administration, and construction claim services—to assist the fact finder's understanding of the various contracts between the parties. He also applied his knowledge of forensic cost estimation and damage calculation in analyzing the valuation

of repairs in the instant case. Movant's objections to the reliability of Mr. Pratt's opinions go to the weight, not admissibility, of those opinions. *See McCluskey*, 954 F. Supp. 2d at 1267.

3. Relevance – Helpfulness to the Trier of Fact

Finally, Movant argues that Mr. Pratt's expert opinions should be precluded as impermissible ultimate conclusions of law. (Doc. # 276 at 13.) Specifically, Movant objects to Mr. Pratt's opinions regarding agency, fiduciary duty, contract interpretation, and the intent of the parties. (*Id*. at 13–15.) The Court agrees with Movant's objection to the extent it seeks to preclude testimony on fiduciary duty, contract interpretation, Bradley Shalz and Scott Benglen as agents, and the intent of the parties.

a. Applicable Legal Principles

Federal Rule of Evidence 704 allows an expert witness to testify about an "ultimate issue to be decided by the trier of fact." Although testimony on ultimate issues of fact are permitted, "testimony on ultimate questions of law is not favored." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). To be admissible, an expert's testimony must be helpful to the trier of fact. Fed. R. Evid. 702. To ensure testimony is helpful, "[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." *Richter*, 796 F.3d at 1195 (quoting *Bedford*, 536 F.3d at 1158).

"The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *United States v. McIver,* 470 F.3d 550, 562 (4th Cir. 2006). Expert testimony on legal issues has been

11

excluded "on the ground that it usurps the function of the jury in deciding the facts," or because it "interferes with the function of the judge in instructing the jury on the law." *United States v. Dazey,* 403 F.3d 1147, 1171 (10th Cir. 2005) (internal quotation marks omitted). To determine whether expert testimony impermissibly instructs the jury on how it should rule, courts consider the basis the expert provides for his or her opinion. *See, e.g., Richter*, 796 F.3d at 1195–96 ("Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field."); *Dazey,* 403 F.3d at 1171–72 ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment."). "Witnesses are permitted to testify about how the law applies to a certain set of facts, so long as they provide adequate explanations for their conclusions." *Richter*, 796 F.3d at 1196*; see, e.g., United States v. Buchanan,* 787 F.2d 477, 483–84 (10th Cir. 1986). "[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Dazey*, 403 F.3d at 1171 (citing *United States v. Simpson*, 7 F.3d 186, 188–89 (10th Cir. 1993)).

     b.    Analysis

         i.    <u>Fiduciary Duty</u>

Movant objects to Mr. Pratt's opinions that Rudy Thompson, Scott Benglen, and Bradley Shalz owed and breached a fiduciary duty. *See, e.g.*, (Doc. # 276-2 at 10) ("this

excessive payment is a clear breach of Rudy Thompson's fiduciary duty to the organization").

In his expert reports, Mr. Pratt deploys the term of art 'fiduciary duty' without factual support. Mr. Pratt conflates Rudy Thompson's contractual duty to secure the best possible price for Plaintiff with a fiduciary duty to Plaintiff.[8] Mr. Pratt does not explain what fiduciary duties Mr. Thompson,[9] Mr. Benglen, or Mr. Shalz owed to Plaintiff or any other party. Nor does he explain how the alleged fiduciary duties were created. He does not even opine on what industry standards would indicate are the fiduciary obligations of someone in the position of these individuals. In fact, Mr. Pratt only uses the term 'fiduciary duty' either to vaguely state that individuals owed an unspecified fiduciary duty or to conclude that individuals breached an unspecified fiduciary duty.[10]

An expert may "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Smith v. Ingersoll–Rand Co.,* 214

---

[8] Mr. Pratt points to the contractual provision that creates Mr. Thompson's duty to secure the best possible price for Plaintiff. He then opines in detail on the costs of repairs and the amount by which Plaintiff overpaid Shalz for those repairs. He thereafter concludes that "this excessive payment is a clear breach of Rudy Thompson's **fiduciary duty** to the organization." (Doc. # 276-2 at 3, 9–16) (emphasis added).

[9] Mr. Pratt seems to use the term 'fiduciary duty' to mean the duty of loyalty. However, there are many kinds of fiduciary duties, and Mr. Pratt's lack of clarity on this point underscores why his opinions are not helpful to the trier of fact.

[10] *See, e.g.*, (Doc. # 276-2 at 2) ("Fiduciary role of Muldoon"); (*id*. at 6) ("there are significant opportunities for Rudy Thompson to violate his fiduciary duties"); (*id*. at 10) ("This excessive payment is a clear breach of Rudy Thompson's fiduciary duty"): (*id*. at 16) ("Rudy Thompson failed to fulfill his fiduciary duty to PSCA, by making Shalz . . . richer"); (*id*. at 19) ("It is Demand's opinion that the conduct of Rudy Thompson, Scott Benglen and Bradley Shalz . . . with respect to their fiduciary obligations to their clients, is conduct that appears to be contrary to the respective professional standards and fiduciary duties. . . . ").

F.3d 1235, 1246 (10th Cir. 2000) (citations omitted). However, expert witnesses must provide adequate explanations for their conclusions. *Dazey,* 403 F.3d at 1171; *Richter*, 796 F.3d at 1195–96 ("Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion . . . ."). Because Mr. Pratt did not establish what fiduciary duties attached to Mr. Thompson, Mr. Benglen, or Mr. Shalz, he cannot opine that certain conduct constituted a breach of fiduciary duty. Such conclusory testimony does not provide the jury with the tools necessary to evaluate Mr. Pratt's conclusions. Therefore, all of Mr. Pratt's testimony concerning fiduciary duty is inadmissible.

ii.  *Contract Interpretation*

Some of Mr. Pratt's testimony on contracts permissibly assists the trier of fact. As Atain and Indian Harbor correctly point out, the contracts Mr. Pratt refers to, by their own terms, indicate a number of obligations and responsibilities. (Doc. # 279 at 4.) Mr. Pratt may direct the jury's attention to provisions in a contract, including the relationships or obligations between the parties that are made explicit by the contract.[11] For example, Mr. Pratt may testify to the fact that the Management Agreement says Muldoon is Plaintiff's agent.[12] Additionally, Mr. Pratt may refer to provisions in the contract that explicitly create the services and duties that Muldoon owes, including the duty to "obtain the best possible price and terms" when executing contracts in the name

---

[11] Mr. Pratt may also direct the jury's attention to what is not in a contract. For example, he may direct the jury's attention to the lack of coverage for public adjuster fees in the Policy held by Plaintiff. He may also direct the jury's attention to the lack of price or scope of work in a contract or the number of signatures on a contract.

[12] The parties did not attach a copy of the Management Agreement as an exhibit to their briefing on the Motion to Preclude Expert Testimony. As a result, the Court accepts Mr. Pratt's representation of the Management Agreement as accurate for the purposes of this Order.

14

of Plaintiff. (Doc. # 276-2 at 2.)

However, an expert witness may not testify as to contract interpretation absent an argument that the contract is ambiguous. *See Hygh*, 961 F.2d at 359. In the instant case, the parties have not asserted that any relevant contract is ambiguous. Therefore, Mr. Pratt may not interpret any contract, including by testifying to what legal relationships or obligations a contract implicitly created. Put differently, Mr. Pratt may not testify to relationships or obligations that are not found within the four corners of the contract.

### iii. *Agency*

Movant next argues that Mr. Pratt impermissibly opines "that all of the actions of Rudy Thompson, Scott Benglen, and Bradley Shalz were supposed to be performed on behalf of the PSCA, while acting as its Agents." (Doc. # 276 at 15.) With respect to Mr. Thompson, Mr. Pratt lays an adequate factual basis for this conclusion in his report, including by citing provisions of the Management Agreement that establish an agency relationship. However, Mr. Pratt lays no such foundation for Mr. Benglen or Mr. Shalz. He points to no contractual provision that obligated Mr. Benglen or Mr. Shalz to act as agents. Nor does he opine on how industry standards may indicate that Mr. Benglen and Mr. Shalz were acting as agents. Absent adequate factual support for these conclusions, Mr. Pratt's opinions on the agency roles of Scott Benglen and Bradley Shalz are inadmissible. *See Richter*, 796 F.3d at 1195–96 (citing *Dazey,* 403 F.3d at

1171–72). Mr. Pratt is precluded from testifying to this effect at trial.

### iv. *Motive, Intent, or State of Mind*

Mr. Pratt offers several inadmissible opinions about the motive, intent, or state of mind of the parties. Rule 702 does not allow an expert witness to speculate as to the intent or state of mind of the parties, and Mr. Pratt has failed to identify any reliable foundation for these opinions. *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (stating "the whole point of *Daubert* is that experts can't 'speculate.'"). Mr. Pratt cannot testify as to motive, intent, or state of mind, but he can testify to facts from which the jury can then infer motive, intent, or state of mind. *See Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-CV-01541-CMA-MLC, 2018 WL 571877, at *3 (D. Colo. Jan. 26, 2018); *DePaepe*, 141 F.3d at 720 (holding an expert witness "could give an opinion as an engineer that [the defendant's decision] saved a particular amount of money" or "that [the defendant's] explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify as an expert that [the defendant] had a particular motive."); *Wells v. Allergan, Inc.*, No. CIV–12–973–C, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) (making the same distinction).

All conclusions that relate to motive, intent, or state of mind are stricken from Mr. Pratt's reports, including the following statements:

- Rudy Thompson, Scott Benglen, and Bradley Shalz "**knowingly, or with reckless disregard for the truth**, presented written claims to the insurance carriers in excess of the actual amount of the actual loss, **for the purpose of**

accepting excessive and unjustifiable insurance benefits." (Doc. # 276-2 at 19);

- "the only reasonable explanation for this post-start-of-litigation email would be to remind Mr. Shalz of the origin of Rudy Thompson's originally contemplated source of additional monies. . . . It also puts on the record, perhaps disingenuously, after the litigation was initiated, that Rudy Thompson "felt that [he] would be doing them [PSCA] an injustice by charging them 10% of the claim . . ." (*Id*. at 8);
- "This is clearly an intentional act designed to deceptively double up the cost." (*Id*. at 15);
- "This also appears to have been done to knowingly increase the amount of the insurance claim pursued by PSCA." (*Id*. at 16).

For the foregoing reasons, the following conclusions are also struck from Mr. Pratt's report:

> It is Demand's opinion that the conduct of Rudy Thompson, Scott Benglen, and Bradley Shalz, in their respective roles with their firms, and with respect to their fiduciary obligations to their clients, is a conduct that appears to be contrary to the respective professional standards and fiduciary duties applicable to the fields of Home Owner Association Management, Property Damage Claims Adjustment, and Property Damage Repair Performance and Pricing. It is also my opinion that the above individuals acting on behalf of Pinion Sun Condominium Association knowingly, or with reckless disregard for the truth, presented written claims to the insurance carriers in excess of the actual amount of the actual loss, for the purpose of collecting excessive and unjustifiable insurance benefits.
>
> * * *
>
> It is Demand's opinion that all of the actions of Rudy Thompson, Scott

> Benglen, and Bradley Shalz, through their respective companies were supposed to be performed on behalf of the PSCA, while acting as its Agents. These individuals are responsible for their actions which the court may find to be inconsistent with their fiduciary obligations to PSCA as its Agents.

(Doc. # 276-2 at 19.) Mr. Pratt is precluded from testifying to this effect at trial, consistent with the rulings in this Order.

**B.     MOTION IN LIMINE**

In its Motion in Limine, Movant argues that the Court should preclude testimony regarding the Shalz Contract's purported invalidity under the Colorado Roofing Statute ("the Roofing Statute"), Colo. Rev. Stat. § 6-22-104, on the grounds that the Insurers lack standing to raise the statute and testimony regarding the statute is irrelevant. *See* (Doc. # 277).

At the motion in limine stage, "[t]he movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *First Sav. Bank*, 117 F. Supp. 2d at 1082. In its Motion, Movant cites to no legal authority to support its argument that the Insurers lack standing to assert the Shalz Contract is invalid under the Roofing Statute. *See* (Doc. # 277). Movant filed no reply to the Insurers' Response. (Doc. ## 278, 283.) Movant has thus failed to meet its burden to demonstrate that the Insurers do not have standing to raise the Roofing Statute.

Furthermore, from the limited briefing before the Court, the Roofing Statute seems generally probative of the adequacy of the Shalz Contract and of the Insurers' affirmative defenses, including fraud and civil conspiracy. Therefore, the Court denies the Motion both to the extent it argues that the Insurers' lack standing to raise the

18

statute and to the extent it argues that the statute is not relevant.

However, the Court has determined that Mr. Pratt is not qualified to testify to the Colorado Revised Statutes. Pursuant to this Order, the Court grants the Motion in Limine to the extent it seeks to preclude testimony from Mr. Pratt on the Roofing Statute. Additionally, whether the Roofing Statute applies to the instant case and whether it limits Plaintiff's recovery are questions of law to be determined by the Court. If the Insurers intend to argue that the Roofing Statute applies, they must brief that issue for the Court at the jury instructions stage. The Court grants the Motion to the extent is seeks to preclude testimony from any witness on the Roofing Statute, unless the Court instructs the jury on the Roofing Statute and the witness is qualified to testify about the statute. Any further ruling on this matter would be premature.

## IV.     CONCLUSION

The Court disagrees with Movant that it is "impossible to identify and extrapolate [the] admissible expert opinion from the clearly inadmissible." (Doc. # 276 at 15.) Rather, a substantial amount of Mr. Pratt's proposed testimony is admissible and would be helpful to the fact finder. Based on the foregoing, Plaintiff and Third-Party Defendants' Motion to Preclude the Testimony of Robert H. Pratt (Doc. # 276) is GRANTED IN PART and DENIED IN PART as follows:

- The Motion is GRANTED as to Mr. Pratt's testimony regarding: Colorado contract law and the Colorado Revised Statutes; the agency roles of Scott Benglen and Bradley Shalz; fiduciary duty; contract interpretation; and motive, intent, or state of mind. Mr. Pratt is precluded from testifying to this effect at trial;

19

- The Motion is DENIED as to Mr. Pratt's testimony regarding: the agency role of Muldoon and Rudy Thompson; what provisions are present in and absent from the contracts at issue; and Mr. Pratt's cost analysis regarding Plaintiff's hail damage and repairs. It is

FURTHER ORDERED that Movants' First Motion in Limine to Preclude Testimony Regarding Shalz Construction's Contract as Not Compliant with Colorado Law Pursuant to C.R.S. 6-22-104 (Doc. # 277) is GRANTED IN PART and DENIED IN PART as follows:

- The Motion is GRANTED to the extent it seeks to preclude testimony from Mr. Pratt on the Roofing Statute and to the extent it seeks to preclude testimony on the Roofing Statute by any witness, absent adequate qualifications and an instruction on the statute by the Court;
- The Motion is DENIED to the extent it argues the Insurers do not have standing to raise the Colorado Roofing Statute's applicability and to the extent it argues the statute is not relevant.

DATED: March 25, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge